GIBSON, DUNN & CRUTCHER LLP
GAIL E. LEES, SBN 90363
GLees@gibsondunn.com
S. ASHLIE BERINGER, SBN 263977
ABeringer@gibsondunn.com
JOSHUA A. JESSEN, SBN 222831
JJessen@gibsondunn.com
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 849-5300
Facsimile:   (650) 849-5333

Attorneys for Defendants
FLURRY, INC.
PINCH MEDIA, INC.

[Counsel For Additional Mobile Industry
Defendants Listed On Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re iPhone Application Litigation | Case No. 10-CV-05878 LHK (PSG)<br><br>**CLASS ACTION**<br><br>**MOBILE INDUSTRY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST CONSOLIDATED CLASS ACTION COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING**:<br>Date:       September 1, 2011<br>Time:      1:30 p.m.<br>Place:     Courtroom 4<br>Judge:    The Honorable Lucy H. Koh |

# TABLE OF CONTENTS

Page

I.   ISSUES TO BE DECIDED ................................................................. 1

II.  INTRODUCTION AND SUMMARY OF ARGUMENT........................................... 1

III. FACTUAL BACKGROUND .................................................................. 3

    A.   Representative Plaintiffs And Proposed Class................................... 3

    B.   Mobile Industry Defendants.................................................... 3

    C.   Allegations Against Mobile Industry Defendants................................ 4

        1.   The Mobile "App" Economy ............................................. 4

        2.   Disclosures To Plaintiffs When Authorizing Applications............... 5

        3.   No Plaintiff Alleges That Any Particular Mobile Industry Defendant Accessed His iOS Device Or "Collected" His Personal Information, Or That He Was Injured ............................... 6

        4.   Asserted Causes Of Action ............................................ 7

IV.  MOTION TO DISMISS STANDARDS........................................................ 7

    A.   Motion To Dismiss For Lack Of Standing Under Rule 12(b)(1)................... 7

    B.   Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6).......... 8

V.   ARGUMENT ........................................................................... 8

    A.   Plaintiffs Lack Standing To Pursue Their Claims ........................... 8

        1.   Plaintiffs Lack Article III Standing................................. 8

        2.   Plaintiffs Lack Standing Under California's Unfair Competition Law...................................................... 11

    B.   The Complaint's Vague, Conclusory, And Undifferentiated Allegations Against The Mobile Industry Defendants Fail To Satisfy The Pleading Requirements Of Rule 8(a) ........................................... 13

        1.   The Complaint Fails To Allege Any Specific Wrongful Conduct As To The Mobile Industry Defendants In General .................... 13

        2.   The Complaint Fails To Differentiate Among The Mobile Industry Defendants ......................................................... 15

    C.   Each Of Plaintiffs' Separate Claims Against The Mobile Industry Defendants Fails To State A Claim............................................ 17

**TABLE OF CONTENTS** *(continued)*

Page

1. Plaintiffs' Claim For Violation Of The Computer Fraud And Abuse Act Fails As A Matter Of Law .............................................................. 17

2. Plaintiffs Fail To State A Claim Under California's Computer Crime Law .................................................................................................. 20

3. Plaintiffs Fail To State A Claim For Trespass To Chattels ............................ 21

4. Plaintiffs Fail To State A Claim Under California's Unfair Competition Law ......................................................................................... 22

  a. Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Unlawful Business Practice .................. 23

  b. Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Unfair Business Practice ...................... 23

  c. Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Fraudulent Business Practice ............... 24

5. California Does Not Recognize A Claim For Unjust Enrichment .................. 25

VI. CONCLUSION ...................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Armendariz v. JPMorgan Chase Bank, NA,*
2011 WL 1869914 (S.D. Cal. May 13, 2011) ................................................................. 17

*Ashcroft v. Iqbal,*
556 U.S. __, 129 S. Ct. 1937 (2009) ................................................................. 8, 15

*Avila v. Countrywide Home Loans,*
2010 WL 5071714 (N.D. Cal. Dec. 7, 2010) ................................................................. 23

*Baba v. Hewlett-Packard Co.,*
2010 WL 2486353 (N.D. Cal. June 16, 2010) ................................................................. 24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. 8

*Belton v. Comcast Cable Holdings, LLC,*
151 Cal. App. 4th 1224 (2007) ................................................................. 24

*Berryman v. Merit Prop. Mgmt.,*
152 Cal. App. 4th 1544 (2007) ................................................................. 23

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ................................................................. 9

*Buena Vista, LLC v. New Res. Bank,*
2010 WL 3448561 (N.D. Cal. Aug. 31, 2010) ................................................................. 24

*Byrd v. Cal. Superior Court, Cnty. of Marin,*
2009 WL 2031761 (N.D. Cal. July 8, 2009) ................................................................. 16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal. 4th 163 (1999) ................................................................. 24

*Chrisman v. City of Los Angeles,*
155 Cal. App. 4th 29 (2007) ................................................................. 21

*Clayworth v. Pfizer,*
49 Cal. 4th 758 (2010) ................................................................. 12

*Creative Computing v. Getloaded.com LLC,*
386 F.3d 930 (9th Cir. 2004) ................................................................. 18

*eBay, Inc. v. Bidder's Edge,*
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................. 21

*Ferrington v. McAfee, Inc.,*
2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ................................................................. 25

*Folgelstrom v. Lamps Plus, Inc.,*
2011 WL 1601990 (Cal. Ct. App. Apr. 29, 2011) ................................................................. 12

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Gauvin v. Trombatore,*
    682 F. Supp. 1067 (N.D. Cal. 1988) ............................................................... 16

*Gen-Probe, Inc. v. Amoco Corp.,*
    926 F. Supp. 948 (S.D. Cal. 1996) ................................................................. 16

*Harrington v. Daiso Japan,*
    2011 WL 2110764 (N.D. Cal. May 26, 2011) ................................................. 15

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) ......................................................................................... 23

*In re Apple & ATTM Antitrust Litig.,*
    2010 WL 3521965 (N.D. Cal. July 8, 2010) ................................................. 19

*In re DoubleClick Privacy Litigation,*
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................... 18, 19

*In re Facebook Privacy Litig.,*
    2011 WL 2039995 (N.D. Cal. May 12, 2011) ........................................... 12, 21

*In re Gilead Scis. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ........................................................................ 15

*In re JetBlue Airways Corp. Privacy Litig.,*
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......................................................... 10

*In re Providian Fin. Corp. ERISA Litig.,*
    2002 WL 31785044 (N. D. Cal. Nov. 14, 2002) ............................................ 16

*In re Sagent Tech., Inc.,*
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ......................................................... 16

*In re Stac Elecs. Sec. Litig.,*
    89 F.3d 1399 (9th Cir. 1996) ............................................................................ 6

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ............................................................................... 12, 25

*In Re Zynga Privacy Litig.,*
    No. C-10-04680 JW (N.D. Cal. June 15, 2011) ........................................ 12, 19

*Intel Corp. v. Hamidi,*
    30 Cal. 4th 1342 (2003) ............................................................................. 21, 22

*Jogani v. Superior Court,*
    165 Cal. App. 4th 901 (2008) ......................................................................... 25

*Johnson v. Weinberger,*
    851 F.2d 233 (9th Cir. 1988) ......................................................................... 8, 9

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 23

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*La Court v. Specific Media, Inc.*,
   2011 WL 1661532 (C.D. Cal. April 28, 2011) ..................................................... 10, 11, 19, 25

*Leong v. Square Enix of Am. Holdings, Inc.*,
   2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ............................................................... 9

*Levitt v. Yelp! Inc.*,
   C 10-1321 MHP (N.D. Cal. Mar. 22, 2011) ................................................................ 24

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................. 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................... 8, 9

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009) ............................................................................. 20

*McDonald v. Coldwell Banker*,
   543 F.3d 498 (9th Cir. 2008) ............................................................................... 24

*Morse v. Regents of University of California, Berkeley*,
   2011 WL 1884216 (N.D. Cal. May 18, 2011) ........................................................... 15

*People v. Gentry*,
   234 Cal. App. 3d 131 (1991) ............................................................................... 20

*Ruiz v. Gap*,
   540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................. 12

*Shamrock Foods Co. v. Gast*,
   535 F. Supp. 2d 962 (D. Ariz. 2008) ..................................................................... 20

*Sisseton-Wahpeton Sioux Tribe v. United States*,
   90 F.3d 351 (9th Cir. 1996) ................................................................................. 26

*Smith & Hawken, Ltd. v. Gardendance, Inc.*,
   2004 WL 2496163 (N.D. Cal. Nov. 5, 2004) ........................................................... 24

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
   2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ........................................................... 25

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .............................................................................. 23

*Thompson v. Home Depot, Inc.*,
   2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) ......................................................... 12

*Ticketmaster Corp. v. Tickets.com, Inc.*,
   2003 WL 21406289 (C.D. Cal. Mar. 6, 2003) .......................................................... 22

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
   2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) ............................................................. 9

Gibson, Dunn &
Crutcher LLP

v

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003)...................................................................... 15, 25

*Walker v. Spencer,*
    2011 WL 1560825 (E.D. Cal. Apr. 26, 2011)...................................................... 17

*Waste Mgmt. of N. Am., Inc. v. Weinberger,*
    862 F.2d 1393 (9th Cir. 1988).............................................................................. 7

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000).............................................................................. 8

**Statutes**

18 U.S.C. § 1030 .................................................................................................. 17

18 U.S.C. § 1030(a)(2) ........................................................................................ 19

18 U.S.C. § 1030(a)(2)(C) ................................................................................... 18

18 U.S.C. § 1030(a)(5) ........................................................................................ 19

18 U.S.C. § 1030(a)(5)(A) ................................................................................... 20

18 U.S.C. § 1030(c)(4)(A)(i)(I) ........................................................................... 18

18 U.S.C. § 1030(e)(11) ....................................................................................... 18

18 U.S.C. § 1030(e)(8) ......................................................................................... 18

18 U.S.C. § 1030(g) ............................................................................................. 18

Cal. Bus. & Prof. Code § 17200 .......................................................................... 22

Cal. Bus. & Prof. Code § 17204 .......................................................................... 12

Cal. Bus. & Prof. Code § 17500 .......................................................................... 23

Cal. Penal Code § 502(b)(10) ......................................................................... 20, 21

Cal. Penal Code § 502(c) ..................................................................................... 20

Cal. Penal Code § 502(c)(1)-(8) .......................................................................... 21

Cal. Penal. Code § 502(e) .................................................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 8

**Constitutional Provisions**

U.S. Const. art. III, § 2 .......................................................................................... 7

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

1

2

## NOTICE OF MOTION AND MOTION TO DISMISS FIRST CONSOLIDATED CLASS ACTION COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 1:30 p.m. on September 1, 2011, or as soon thereafter as the matter may be heard by the above-entitled Court, in the courtroom of the Honorable Lucy H. Koh, 280 South 1st Street, San Jose, CA 95113, Defendants AdMob, Inc., Flurry, Inc., MobClix, Inc., Pinch Media, Inc., Traffic Marketplace, Inc., Millennial Media Inc., AdMarvel, Inc., and Quattro Wireless, Inc. (the "Mobile Industry Defendants") will and hereby do move for an order dismissing Plaintiffs' First Consolidated Class Action Complaint (the "Complaint") *with prejudice* under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    ISSUES TO BE DECIDED

1.    Do Plaintiffs have standing under Article III of the United States Constitution and California's Unfair Competition Law ("UCL")?

2.    Do Plaintiffs' allegations against the eight Mobile Industry Defendants satisfy the pleading requirements of Rule 8(a) and Rule 12(b)(6) under *Iqbal* and *Twombly*?

3.    Does any of Plaintiffs' five claims against the Mobile Industry Defendants state a claim upon which relief can be granted?

### II.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' claims against the eight Mobile Industry Defendants fail to allege that any particular Mobile Industry Defendant has engaged in any act involving any particular Plaintiff at all, much less

---

[1]    The Mobile Industry Defendants respect the Court's preference to be presented with one brief on behalf of all Defendants and therefore have coordinated in filing a single brief on behalf of each of the eight non-Apple defendants. Because Plaintiffs have asserted certain claims against Apple but not against the Mobile Industry Defendants, and *vice versa*, and have different theories of liability against Apple than against the Mobile Industry Defendants, however, the Mobile Industry Defendants believe a separate brief on behalf of these eight defendants is appropriate. The Mobile Industry Defendants have attempted to avoid any unnecessary duplication with Apple's brief.

1    that any act violated any law or harmed any Plaintiff.  Instead, Plaintiffs' Complaint is an amorphous

2    critique of the core business model of the mobile application industry in general.  Plaintiffs concede that

3    the advertising and related services on software applications that users voluntarily download to their

4    Apple-manufactured iPhones, iPads, and iPod Touches (the "iOS Devices") enables application

5    developers to provide hundreds of thousands of free or low-cost applications to users, including the

6    "numerous" applications that Plaintiffs admittedly use and enjoy.  Yet Plaintiffs' Complaint is

7    predicated on the notion that it somehow is unlawful for the companies that provide those services to

8    obtain the anonymous data needed to deliver them.  Plaintiffs' attempt to liken these commonplace and

9    perfectly legal practices to computer hacking or theft is dangerous and misguided, and, if allowed to go

10   forward, threatens to chill one of the most robust sectors of the U.S. economy.

11         Plaintiffs' theoretical allegations do not support any of their claims and fail as a matter of law.

12   Critically, Plaintiffs do not point to a single instance where *any* Mobile Industry Defendant obtained

13   *any* data from Plaintiffs' iOS Devices, much less specify what information any individual Mobile

14   Industry Defendant supposedly accessed, or how such access, or any use of the unspecified information

15   acquired by such access, violated any law.  Nor do Plaintiffs allege that they lost money or property or

16   were otherwise injured by any of these Defendants or otherwise.  Plaintiffs' generic and speculative

17   allegations cannot survive the pleadings stage for at least three independent reasons.

18         ***First***, despite Plaintiffs' naked assertions that they have somehow been harmed by the actions of

19   the Mobile Industry Defendants, the Complaint fails to identify a single instance in which a single

20   person lost even one penny—or was specifically harmed in any other way—as a result of the alleged

21   conduct.  Accordingly, Plaintiffs have failed to allege any injury in fact, and they therefore lack

22   standing to maintain a lawsuit under Article III of the U.S. Constitution, which requires dismissal of

23   their Complaint under Federal Rule of Civil Procedure 12(b)(1).  Additionally, because Plaintiffs have

24   not alleged, and cannot allege, any loss of money or property, they also lack standing to pursue a claim

25   under California's UCL.

26         ***Second***, the Complaint lumps all of the Mobile Industry Defendants into a single category and

27   proceeds to make collective and undifferentiated allegations against them.  The Complaint fails to

28   specify what any individual Mobile Industry Defendant is alleged to have done.  Plaintiffs' conclusory,

*en masse* pleading fails to satisfy Rule 8(a)'s and Rule 12(b)(6)'s pleading standards, particularly in the wake of the Supreme Court's decisions in *Twombly* and *Iqbal*.

**Finally**, even if the Complaint could establish standing or meet the requisite pleading requirements, each of the five claims against the Mobile Industry Defendants fails to state a claim upon which relief can be granted.  Simply put, Plaintiffs are attempting to shoehorn widespread industry protocols into laws (including two criminal statutes) and common law claims that plainly do not cover—and were never intended to cover—the type of conduct that Plaintiffs challenge here.  Courts consistently have rejected similar attempts by other plaintiffs to expand these laws to cover standard Internet technologies, and this Court should do the same.

### III.    FACTUAL BACKGROUND

**A.    Representative Plaintiffs And Proposed Class**

The named plaintiffs are five individuals "who use mobile devices manufactured by" Apple: Anthony Chiu; Dustin Freeman; Jonathan Lalo; Jared Parsley; and Daniel Rodimer.  Compl. ¶¶ 8-13. Without setting forth any details, the Complaint alleges that Plaintiffs "used numerous free and paid apps from the [Apple] App Store during the Class Period."  *Id.*  Critically, Plaintiffs do not allege that any of the Mobile Industry Defendants accessed or obtained any information from their iOS Devices, much less attempt to specify what information any particular Mobile Industry Defendant supposedly obtained or used.  Plaintiffs purport to bring this action on behalf of the following Class:

> All persons residing in the United States who have downloaded software from the App Store on a mobile device that runs Apple's iOS, (iPhone, iPad and/or iPod Touch), from December 1, 2008 to the date of the filing of [the] Complaint.

*Id.* ¶ 99.

**B.    Mobile Industry Defendants**

In addition to asserting claims against Apple, Plaintiffs have asserted claims against eight different companies that allegedly provide a wide range of third-party mobile software applications and services to mobile applications:  AdMob; Flurry; MobClix; Pinch Media; Traffic Marketplace; Millennial Media; AdMarvel; and Quattro Wireless.  Compl. ¶¶ 15-22.  Throughout the Complaint, Plaintiffs lump each of these companies together under the misleading term "Tracking Defendants."

1    *Id.* ¶ 23.  Because that term mischaracterizes these companies' activities, these defendants are

2    referred to herein as the "Mobile Industry Defendants."

3           Plaintiffs allege that the various Mobile Industry Defendants provide different types of

4    services relating to third-party software applications, including providing applications, furnishing

5    technical support for advertisements in mobile applications, analyzing application performance,

6    serving the content for mobile advertisements, and furnishing "advertising network solutions" to

7    application publishers.  *Id.* ¶¶ 15-22, 65.  Plaintiffs' allegations concede that the types of services

8    some Mobile Industry Defendants provide differ significantly from those provided by other Mobile

9    Industry Defendants.  *See id.*  Yet the linchpin of Plaintiffs' complaint against the Mobile Industry

10   Defendants appears in a single, conclusory allegation that the Mobile Industry Defendants "collect"

11   unspecified "personal information transmitted from users' iDevices" for the purpose of "display[ing]

12   advertisements to users **or** provid[ing] metrics and analytics services used . . . to track and measure

13   user activity."  *Id.* ¶ 23 (emphasis added).  Plaintiffs make no attempt to identify *which* Mobile

14   Industry Defendants engage in which different activity, or to specify what "personal information" (if

15   any) is actually collected by any particular Defendant.  *Id.*

16   **C.     Allegations Against Mobile Industry Defendants**

17          Fundamentally, the Complaint takes issue with the core business and technical infrastructure

18   of the wildly popular mobile application marketplace, which consists of more than "10 billion apps"

19   downloaded by users to date.  Compl. ¶ 35.  Plaintiffs complain that applications and the third-party

20   service providers that provide critical support and advertising for those applications are able to obtain

21   unspecified information from Plaintiffs' iOS Devices when consumers voluntarily download

22   application software onto their iOS Devices.

23          **1.     The Mobile "App" Economy**

24          Mobile devices generally serve as a "mobile platform" on which users may choose to

25   download numerous third-party software applications ("Apps" or "applications") that allow them to

26   engage in countless different functions from a single, hand-held device.  *See* Compl. ¶¶ 28-33, 37, 39.

27   As the Complaint acknowledges, many popular mobile applications—including those used by

28   Plaintiffs—are free or very low cost and can exist only due to the availability of mobile advertising

that allows the application "publisher" to support the costs of developing and providing free content and services to end users. *Id.* ¶¶ 6, 39, 61-62. Just as on the Internet, a mobile user is able to read the *Los Angeles Times* on her iPad through her Los Angeles Times application largely for "free" only because the application displays third-party advertisements that make it economically viable for the *Los Angeles Times* to provide this content to users. And, just as on the Internet, publishers of mobile applications or websites (such as the Los Angeles Times App or latimes.com) do not typically provide the third-party advertisements that appear in their content; instead, application and website publishers turn to specialized companies—such as some of the Mobile Industry Defendants—to provide, deliver, and/or measure the performance of the advertisements that appear in their applications and/or to aggregate general metrics demonstrating how users are engaging with their applications. *See id.* ¶¶ 6, 15-23, 39, 61-62.

> ### 2.    Disclosures To Plaintiffs When Authorizing Applications

While the Complaint focuses heavily on the terms of Apple's agreements with *application developers* (Compl. ¶¶ 45-48), Apple's developer terms do not circumscribe *users*' expectations or agreements when authorizing applications on their mobile devices. Indeed, Plaintiffs concede that Apple's contracts with developers are not public, and thus, are not even available to users who download applications onto their iOS Devices. *Id.* ¶¶ 5, 46.

Before a user may use a particular application, she must affirmatively authorize the application by downloading it to her device and agreeing to its terms of service. And before a user can download that application from Apple's App Store, the user must first agree to Apple's App Store Terms and Conditions, which is "required to create a user App Store account." *Id.* ¶ 36. Contrary to Plaintiffs' contention that any access by the Mobile Industry Defendants to their mobile devices was "unauthorized" and "without notice," Apple's Terms and Conditions (which are subject to Apple's Privacy Policy) specifically provide:

> Third-Party Sites and Services
>
> Apple websites, products, applications, and services may contain links to third-party websites, products, and services. **Our products and services may also use or offer products or services from third parties − for example, a third-party iPhone app. Information collected by third parties, which may include such things as location**

**data or contact details, is governed by their privacy practices.**  We encourage you to learn about the privacy practices of those third parties.[2]

*See* Declaration of S. Ashlie Beringer ("Beringer Decl."), Exh. A (emphasis added).  Thus, Apple's Terms and Conditions—which Plaintiffs cite and on which they rely in the Complaint—plainly disclose to each and every user who downloads a mobile application onto an Apple device that: (1) third parties that provide products and services may collect information from users' iOS Devices, such as "location data or contact details"; and (2) third-party access to data on users' iOS Devices is *governed by the privacy policies of such third parties*—not Apple's policies.[3]

Despite this, Plaintiffs do not point to a single applicable privacy policy that misrepresents the practices engaged in by any application developer or Mobile Industry Defendant.  Nor do Plaintiffs allege that any of the Mobile Industry Defendants made *any* representation or promise—much less a false or misleading one—to mobile device users or otherwise.

> **3.**     **No Plaintiff Alleges That Any Particular Mobile Industry Defendant Accessed His iOS Device Or "Collected" His Personal Information, Or That He Was Injured**

None of the Plaintiffs points to a single instance of a Mobile Industry Defendant accessing his Apple device for any purpose, much less to collect personal information about him.  Instead, after alleging generally that App developers "can" access various types of personally identifiable information, Compl. ¶ 58, the Complaint relies entirely on vague and unsupported allegations about the putative practices of "some" unspecified Mobile Industry Defendants.  *Id.* ¶¶ 63-69.  In the most general terms possible, Plaintiffs contend that certain of these companies "acquire[d] details about

---

[2]  This Court may consider the contents of Apple's Terms and Conditions and Privacy Policy when ruling on the instant motion.  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

[3]  Plaintiffs initially named several application developers themselves—including The New York Times, Pandora, NPR, and others—as defendants.  Plaintiffs have not included those entities as defendants in the new Complaint (although Plaintiffs entered into tolling agreements with them and apparently reserved the right to add them as defendants at a later date).  By removing the application developers as defendants, Plaintiffs presumably hope to avoid drawing the Court's attention to the tens of thousands of privacy policies and agreements that this lawsuit implicates—highly-individualized facts that alone would preclude class certification if this matter ever advanced beyond the pleading stage.

consumers" and somehow used them "to compile" other information that supposedly was "useful" to them.  *Id.*  But the Complaint is utterly lacking in details concerning which Mobile Industry Defendants supposedly engaged in these practices, what information specific Mobile Industry Defendants supposedly accessed, how (and where) this information was accessed, which applications' policies applied, and which Plaintiff (if any) was involved.  Likewise, the Complaint does not contain a single, specific allegation that any Plaintiff lost money or property or was in any way injured by the Mobile Industry Defendants' supposed collection and use of Plaintiffs' information.  Instead, the Complaint rests entirely on the vague, speculative, and alternative theories that the Mobile Industry Defendants somehow "devalued consumers' information," "imposed . . . undisclosed cost[s] on consumers," and deprived consumers of "the opportunity to have entered into value-for-value exchanges with other app providers."  *Id.* ¶¶ 85-89.  The statements are made without pointing to a single, specific fact or supporting detail.

### 4.        Asserted Causes Of Action

Based on these generic and conclusory allegations, Plaintiffs attempt to state five claims against the Mobile Industry Defendants:

(1)  Violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Two);
(2)  Violation of California's Computer Crime Law, Cal. Pen. Code § 502 (Count Three);
(3)  Trespass to Chattels (Count Four);
(4)  Violation of California's Unfair Competition Law (Count Six); and
(5)  Unjust Enrichment (Count Eight).

As explained in detail below, Plaintiffs lack standing to pursue these claims, and the claims fail as a matter of law in any event.

## IV.     MOTION TO DISMISS STANDARDS

### A.     Motion To Dismiss For Lack Of Standing Under Rule 12(b)(1)

"A federal court's judicial power extends to cases arising under the laws of the United States."  *Waste Mgmt. of N. Am., Inc. v. Weinberger*, 862 F.2d 1393, 1397 (9th Cir. 1988) (citing U.S. Const. art. III, § 2).  "However, it is not enough that a litigant alleges that a violation of federal law has occurred; the litigant must have standing to invoke the federal court's power. . . .  Absent injury, a violation of a statute gives rise merely to a generalized grievance but not to standing."  *Waste*

1   *Mgmt.*, 862 F.2d at 1397-98 (citations omitted).  A challenge to standing under Article III "pertain[s]

2   to a federal court's subject-matter jurisdiction" and is therefore "properly raised in a motion under

3   Federal Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

4   **B.      Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6)**

5          Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

6   complaint for failure to state a claim upon which relief can be granted.  To survive a motion to

7   dismiss for failure to state a claim, a complaint must state "enough facts to state a claim to relief that

8   is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v.*

9   *Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  The complaint need not contain detailed factual

10  allegations, but the plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief'"; this

11  "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

12  action will not do." *Bell Atl. Corp.*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949.

13                            **V.      ARGUMENT**

14  **A.      Plaintiffs Lack Standing To Pursue Their Claims**

15          **1.      Plaintiffs Lack Article III Standing**

16          Plaintiffs have failed to plead facts sufficient to establish that they suffered a cognizable

17  injury in fact to satisfy "the irreducible constitutional minimum of standing" under Article III.  *Lujan*

18  *v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   To meet the requirements of Article III standing,

19  Plaintiffs must allege, *inter alia*, that they "have suffered an 'injury in fact'—an invasion of a legally

20  protected interest which is (a) concrete and particularized . . . and (b) actual and imminent, not

21  conjectural or hypothetical." *Id.* at 560-561.  A plaintiff does not satisfy the standing requirement

22  "[w]hen 'speculative inferences' are necessary . . . to establish [the] injury." *Johnson v. Weinberger*,

23  851 F.2d 233, 235 (9th Cir. 1988).  Because Plaintiffs have failed to allege that they have suffered

24  any injury whatsoever (let alone a non-speculative one), they lack standing to pursue their claims.

25  Additionally, Plaintiffs' failure to differentiate among the eight Mobile Industry Defendants in their

26  Complaint necessarily means that they also have failed to establish the other two elements necessary

27  to have Article III standing:  (2) "the injury [is] fairly traceable to the challenged action of the

28

1   defendant;" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by

2   a favorable decision." *Lujan*, 504 U.S. at 560-61.

3           Importantly, in a putative class action, the named plaintiffs purporting to represent the class

4   must establish that they *personally* have standing to bring the action.  If the named plaintiffs cannot

5   maintain the action on their own behalf, they may not seek such relief on behalf of the class.  *See*

6   *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and

7   show that they personally have been injured, not that injury has been suffered by other, unidentified

8   members of the class to which they belong and which they purport to represent.'") (citations

9   omitted); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (affirming dismissal of putative

10  class action brought by iPod users for lack of standing where "[t]he risk of injury the plaintiffs allege

11  is not concrete and particularized *as to themselves*") (emphasis in original); *Leong v. Square Enix of*

12  *Am. Holdings, Inc.*, 2010 WL 1641364, at *3 (C.D. Cal. Apr. 20, 2010) (explaining that "[i]n a class

13  action, at least one named plaintiff must have standing," and dismissing class action complaint for

14  lack of standing).

15          Here, the 210-paragraph Complaint is devoid of a single allegation that any named Plaintiff

16  lost money or was in any way harmed by any of the Mobile Industry Defendants' alleged conduct.

17  Plaintiffs do not allege that they themselves (i) downloaded any Apps whose developers had business

18  relationships with any of the eight Mobile Industry Defendants, or (ii) had *their* "personal

19  information" collected by any of the Mobile Industry Defendants.  Plaintiffs instead rely entirely on

20  generic descriptions of the alleged practices of the Mobile Industry Defendants—and the alleged

21  impact of those practices on unspecified consumers—to support their theory of injury.  *See, e.g.*,

22  Compl. ¶¶ 62-64.  This is insufficient under Article III.  *See, e.g., Birdsong*, 590 F.3d at 960-61

23  (plaintiff iPod users lacked standing when they did "not claim that they suffered or imminently

24  [would] suffer hearing loss from their iPod use," but "[a]t most . . . [pled] a potential risk of hearing

25  loss not to themselves, but to other unidentified iPod users . . . ."; "[t]he plaintiffs have not shown the

26  requisite injury to themselves and therefore lack standing"); *Johnson*, 851 F.2d at 235 (affirming

27  dismissal of complaint for lack of Article III standing where injury was hypothetical); *Two Jinn, Inc.*

28  *v. Gov't Payment Serv., Inc.*, 2010 WL 1329077, at *3-4 (S.D. Cal. Apr. 1, 2010) (dismissing

1    plaintiff's claims for lack of Article III standing where plaintiff's claims of injury were speculative

2    and non-concrete).

3             In addition to failing to establish injury in fact for any named Plaintiff, the Complaint also

4    fails to adequately allege any "injury" suffered by the putative class.   The gravamen of Plaintiffs'

5    collective "injury" allegations is that "[c]onsumers' information . . . has discernable value as an asset

6    in the information marketplace," which value is somehow (Plaintiffs do not explain how)

7    "diminished" when it is collected by third parties.  Compl. ¶¶ 91, 93.  Plaintiffs contend that the

8    Mobile Industry Defendants' purported collection of unspecified information from consumers

9    imposed "opportunity costs on consumers" by somehow preventing consumers from "enter[ing] into

10   value-for-value exchanges with other app providers whose business practices better conformed to

11   consumers' expectations." *Id.* ¶ 89.  This theory of harm, in which Plaintiffs seek to equate "personal

12   information" with money, has no support in fact or law.  *See, e.g.*, *In re JetBlue Airways Corp.*

13   *Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("There is . . . no support for the

14   proposition that an individual['s] . . . personal information has or had any compensable value in the

15   economy at large.").  And not surprisingly, Plaintiffs provide no examples of "value-for-value

16   exchanges" that they were prevented from entering into or that were rendered more expensive as the

17   result of the Mobile Industry Defendants' alleged conduct.  Nor do Plaintiffs provide a single

18   example of any one of them who "market[ed] [his] own information" in the "information

19   marketplace" *at all*—much less a Plaintiff who had the purported value of that unspecified

20   information "diminished" as a result of any Defendant's alleged conduct.  Compl. ¶¶ 91, 93.

21            Plaintiffs' highly theoretical allegations of "injury" are virtually identical to the allegations of

22   harm recently rejected by Judge Wu in the Central District in another Internet privacy case recently

23   brought by Plaintiffs' counsel—*La Court v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr.

24   28, 2011).  *La Court* concerned the alleged "tracking" of Internet users and the collection of their

25   "personal information" by an Internet advertising company through the use of so-called "Flash

26   cookies" that allegedly were used without users' knowledge or consent to circumvent users' browser

27   settings, purportedly in violation of the same federal and state laws asserted here.  As in the present

28   case, the plaintiffs in *La Court* could not articulate how anyone had actually been harmed by the

alleged practices, so they resorted to theoretical discussion about "the nature of 'Internet business models [being] . . . driven by consumers' willingness to supply data about themselves'" and "such concepts as 'opportunity costs,' 'value-for-value exchanges,' 'consumer choice,' and other concepts," *id.* at *4—precisely the concepts relied on by Plaintiffs in the instant Complaint. *See* Compl. ¶¶ 85-89.

Judge Wu dismissed the *La Court* complaint on the basis that the named plaintiffs lacked standing under Article III. The court observed that while it "would recognize the viability *in the abstract* of such concepts . . . what Plaintiffs really need to do is give some particularized example of their application in this case." *La Court*, 2011 WL 1661532, at *4 (emphasis added). The court observed that "the Complaint does not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as the result of [defendant's] alleged conduct," and stated that "even assuming an opportunity to engage in a 'value-for-value exchange,' Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party." *Id.* at *5. Precisely the same is true of the Complaint here.

Plaintiffs also fleetingly contend (as did the plaintiffs in *La Court*)—although again without providing a single allegation of harm *to a named Plaintiff*, and in an allegation that strains credulity—that Defendants' conduct somehow "degrad[ed] the performance of Plaintiffs' and Class Members' iDevices" by "consuming the resources" and "diminishing the . . . capabilities of" their iOS Devices. Compl. ¶¶ 171-72. These vague and conclusory allegations are also insufficient to confer standing, and the Court should disregard them, just as the court did in *La Court*. *See La Court*, 2011 WL 1661532, at *5 ("If Plaintiffs are suggesting that their computers' performance was compromised . . . they need to allege facts showing that is true."). Thus, even if the Court were to consider Plaintiffs' general (i.e., non-named-plaintiff) allegations of harm, the Complaint still fails to allege that the Plaintiffs suffered a cognizable injury in fact. Therefore, it must be dismissed.

## 2. Plaintiffs Lack Standing Under California's Unfair Competition Law

Under California's UCL, a private person has standing to bring a UCL action only if he or she "has suffered injury in fact *and* has lost money or property as a result of the unfair competition." Cal.

11

Gibson, Dunn &
Crutcher LLP

Bus. & Prof. Code § 17204 (emphasis added).  Plaintiffs here have not shown that they suffered any injury in fact, and they certainly have not pointed to any loss of money or property.  Nor can they. Even if Plaintiffs were to specifically identify any "personal information" that any particular Mobile Industry Defendant specifically collected from them, the law is clear that the loss of personal information cannot constitute lost money or property under the UCL.  As the Court recently explained in *In re Facebook Privacy Litigation*:

> Here, Plaintiffs do not allege that they lost money as a result of Defendant's conduct. Instead, Plaintiffs allege that Defendant unlawfully shared their "personally identifiable information" with third-party advertisers. . . . However, personal information does not constitute property for purposes of a UCL claim.

2011 WL 2039995, at *6 (N.D. Cal. May 12, 2011).  *See also In Re Zynga Privacy Litig.*, No. C-10-04680 JW, at *4 (N.D. Cal. June 15, 2011) (same); *Ruiz v. Gap*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (granting motion for judgment on the pleadings with respect to UCL claim and noting that plaintiff has not "presented any authority to support the contention that unauthorized release of personal information constitutes a loss of property"); *Thompson v. Home Depot, Inc.*, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) ("Plaintiff's related argument—which he urges without citation to supporting authority—that his personal information constitutes property under the UCL, is similarly unpersuasive and also rejected.").

California courts likewise have rejected UCL claims where, as here, the plaintiffs' theory of harm rested on mere speculation that the value of information was diminished by the defendants' alleged access to or use of it.  *See, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 2011 WL 1601990, at *4 (Cal. Ct. App. Apr. 29, 2011) ("[E]ven if plaintiff had an intellectual property interest in his address, he does not explain how that interest has been economically diminished by Lamps Plus. . . .  The fact that the address had value to Lamps Plus, such that the retailer paid Experian a license fee for its use, does not mean that its value to plaintiff was diminished in any way.").

Accordingly, Plaintiffs also lack standing to pursue their UCL claim.  *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 319-20 (2009) (holding that representative plaintiffs must meet UCL standing requirements); *Clayworth v. Pfizer*, 49 Cal. 4th 758, 789 (2010).

**B.**     **The Complaint's Vague, Conclusory, And Undifferentiated Allegations Against The Mobile Industry Defendants Fail To Satisfy The Pleading Requirements Of Rule 8(a)**

Even if Plaintiffs could establish standing to bring suit, they have failed to make a single, concrete claim of *any* conduct by any particular Mobile Industry Defendant, much less an allegation that would support a finding that any of these Defendants violated any law or harmed any Plaintiff. To the extent Plaintiffs make any allegations at all against the Mobile Industry Defendants, those allegations are made collectively, without any effort to differentiate among these eight companies, as required.  Plaintiffs' Complaint therefore fails to meet the most basic pleading standards under Rule 8(a) established in *Twombly*, *Iqbal*, and their progeny.

**1.**     **The Complaint Fails To Allege Any Specific Wrongful Conduct As To The Mobile Industry Defendants In General**

Plaintiffs make no effort to specify any conduct allegedly engaged in by any particular Mobile Industry Defendant or to explain how (or whether) any particular Mobile Industry Defendant injured any Plaintiff.  Instead, the Complaint devotes pages to Apple's policies, and more pages to general theories of how advertising works on mobile devices, even as it fails to make *any* factual allegations whatsoever of *any* conduct by *any* particular Mobile Industry Defendant.  In fact, beyond identifying them as parties, the only mention of any individual Mobile Industry Defendant in the Complaint is found in paragraphs 65 and 66, which mention Quattro, Pinch Media, and AdMob in background allegations, but without alleging any facts that relate to Plaintiffs' claims here.

Plaintiffs' core complaint appears to be that it somehow is unlawful for companies to access anonymous or technical information from Apple devices for the purpose of serving advertising or providing other services to the "numerous" applications that Plaintiffs and other users choose to download onto their iOS Devices.  As is detailed in Section V.C below, Plaintiffs' claims could not survive the pleading stage even if they were pled with the requisite specificity and support required under Rule 8(a).  The more fundamental problem for purposes of this Motion, however, is that Plaintiffs have failed to even plead such facts at all, making it impossible for either the Mobile Industry Defendants or the Court to respond to or assess them.  Indeed, the Complaint does little more than cite and quote public reports that identify the *possibility* that unspecified information might be misused, cite the sorts of data that unspecified applications and related companies *might* be

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

able to acquire from a user's phone, and speculate that, if passed on to unidentified third parties, that data *could* be combined with other (again, unspecified) information to "effectively or actually deanonymize" the user.  Compl. ¶¶ 58, 81.  But the Complaint does not allege that any of these speculated evils has actually occurred, much less that such evil was done *by* any of the Mobile Industry Defendants or *to* any of the Plaintiffs.

To begin with, not one of the Plaintiffs identifies a single App that he actually used, much less alleges that any App (or company providing advertising or services for such App) actually collected any data from his iOS Device.  Instead, Plaintiffs allege collectively only that they "downloaded and used numerous free and paid apps from the App Store. . . ."  *Id*. ¶¶ 8-13.  But Plaintiffs do not identify which Apps they allegedly downloaded and used.  Nor do Plaintiffs attempt to identify what disclosures were made or what agreements they entered into when they elected to download these "numerous" applications onto their phones, including disclosures and agreements relating to the use of data to deliver advertising and other application services.  There are literally hundreds of thousands of separate Apps, each with its own contractual relationship with its users.  *See supra* pp. 2, 4-6.  As a result of Plaintiffs' wholly insufficient allegations, it is not possible to determine whose policies are to be examined to address the extent of disclosure or consent for particular Plaintiffs here.

Next, to whom are these unnamed Apps alleged to have disclosed information, and what information are they alleged to have disclosed?  What agreements are alleged to govern those purported disclosures?  Again, Plaintiffs do not say.  Some Apps may receive and use geolocation data to deliver their core product:  a restaurant recommendation site, a weather service, or a map application effectively is worthless if it does not know where the user is.  Other Apps may require user registration data in order to provide their core functionality.  Some App developers work with one or more of the Mobile Industry Defendants, while others do not.  Some have affirmative, click-through contracts with their users, while others rely principally on disclosures in published privacy policies on websites or elsewhere.

Most critically, there is not a single allegation anywhere in the Complaint that a single scrap of data (personal or otherwise) was ever transmitted from any Plaintiff's iOS Device (whether with or

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

without consent) to any of the Mobile Industry Defendants, much less a hint as to which App passed that data along, or under what circumstances.  Instead, the Complaint rests entirely on generalized descriptions of the entire mobile phone market, combined with fact-free conclusory allegations that the Mobile Industry Defendants "have continued to acquire details about consumers and to track consumers."  Compl. ¶ 67.  Which Defendants are claimed to have done what to whom, however, is omitted entirely.  *See id.* ¶¶ 15-22.

Plaintiffs' failure to set forth a single fact concerning the putative conduct of any Mobile Industry Defendant—much less to specify facts that support a plausible inference that any of these Defendants engaged in unlawful conduct that injured one of the Plaintiffs—falls well short of the basic pleading requirements established by the Supreme Court in *Iqbal.  See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Harrington v. Daiso Japan*, 2011 WL 2110764, at *4 (N.D. Cal. May 26, 2011) (finding complaint for violations of UCL and CLRA fell "far, far short of the *Iqbal* pleading standard," where plaintiffs failed to "identify the allegedly unsafe items, how these items were acquired, or how these items allegedly caused harm" and where complaint was "replete with factual generalizations and legal conclusions"); *Morse v. Regents of University of California, Berkeley*, 2011 WL 1884216, at *2 (N.D. Cal. May 18, 2011) ("[T]he court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (*quoting In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).[4]

### 2.    The Complaint Fails To Differentiate Among The Mobile Industry Defendants

Not only does the Complaint fail to allege any particular wrongful acts as to the Mobile Industry Defendants collectively, it likewise *also* fails to specify what acts it contends each of these

---

[4]  The Complaint is also replete with allegations of a course of fraudulent conduct upon which Plaintiffs base certain of their claims.  *See, e.g.*, Compl. ¶¶ 141, 155, 160-62, 184, 186-87, 191-93.  Plaintiffs, for example, allege that "Defendants" made "misleading statements relating to Defendants' performance of services and provision of goods" (*id.* ¶ 186), but fail to identify a single such statement.  Any claims sounding in fraud must be pled with particularity under Rule 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  As Plaintiffs have failed to satisfy Rule 8(a)'s pleading requirements, they also have failed to satisfy the stricter requirements of Rule 9(b), and the Complaint fails for this additional reason.

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn & Crutcher LLP

1    eight Defendants committed individually.  After alleging that each of the eight Mobile Industry

2    Defendants provides varying services to mobile users and application developers, the Complaint

3    proceeds to accuse these Defendants *en masse* of engaging in unspecified misconduct that somehow

4    involved the use of unidentified data from users' Apple devices.  But this is not a case in which the

5    acts that allegedly support each class member's claims against each defendant are the same.  Rather,

6    the Complaint concedes that each Mobile Industry Defendant is engaged in a *separate* business and

7    has *separate* agreements with different Apps that may or may not have been used by different users,

8    including Plaintiffs.  *See, e.g.*, Compl. ¶ 67.

9        Plaintiffs' attempt to lump the various individual Defendants together indiscriminately has

10   long been held inadequate under basic federal pleading standards.  Even before the Supreme Court

11   clarified in *Twombly* and *Iqbal* that a plaintiff's "factual allegations must be enough to raise a right to

12   relief above the speculative level," courts routinely rejected undifferentiated pleadings against

13   multiple defendants, like the Complaint's claims against the Mobile Industry Defendants.  *See In re*

14   *Sagent Tech., Inc.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a

15   claim because plaintiffs do not indicate which individual defendant or defendants were responsible

16   for which alleged wrongful act."); *In re Providian Fin. Corp. ERISA Litig.*, 2002 WL 31785044, at

17   *1 (N.D. Cal. Nov. 14, 2002) (complaint alleging breach of the fiduciary duty requirements imposed

18   by ERISA insufficient where the plaintiffs "lumped the various classes of defendants into an

19   undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties"); *Gen-*

20   *Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 962 (S.D. Cal. 1996) ("Defendants may be accused of

21   a violation only by supporting allegations that specifically refer to that defendant."); *Gauvin v.*

22   *Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (holding that lumping together multiple

23   defendants in one broad allegation fails to satisfy notice requirement of Fed. R. Civ. P. 8(a)(2)).

24       The Supreme Court's seminal decisions elucidating Rule 8 pleading standards further

25   underscored that plaintiffs cannot lump defendants together in their allegations and "satisfy the

26   *Twombly* and *Iqbal* pleading standards."  *Byrd v. Cal. Superior Court, Cnty. of Marin*, 2009 WL

27   2031761, at *9 (N.D. Cal. July 8, 2009) (dismissing section 1983 and 1985 claims and instructing

28   plaintiff to replead "so that each claim . . . as to each defendant is stated separately and the actions of

each are spelled out"). *See also Armendariz v. JPMorgan Chase Bank, NA*, 2011 WL 1869914, at *2 (S.D. Cal. May 13, 2011) ("While this may have been convenient for purposes of drafting the Complaint, referencing the Defendants individually and as a group simply as 'Lender' makes it impossible to discern which allegations relate to which Defendant.  Not only does this prevent the Court from gathering a clear view of the factual history of Plaintiffs' claims, it also fails to give the individual Defendants the notice necessary to defend against the particular acts of wrongdoing alleged."); *Walker v. Spencer*, 2011 WL 1560825, at *2 (E.D. Cal. Apr. 26, 2011) ("Here, the complaint does not ascribe any specific act to any particular defendant.  Instead, it groups all defendants indiscriminately together, without describing which defendant performed which allegedly harmful act.  Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the complaint must be dismissed.").

For this independent reason, the claims against the Mobile Industry Defendants must be dismissed because they fail to comply with Rule 8(a)'s basic pleading requirements, and therefore fail to state a claim under Rule 12(b)(6).

## C.     Each Of Plaintiffs' Separate Claims Against The Mobile Industry Defendants Fails To State A Claim

Even if the Court were to overlook Plaintiffs' dual failures to establish standing and to meet the minimal pleading requirements of Rule 8(a) under *Twombly* and *Iqbal*, the Complaint still fails to state a claim under Rule 12(b)(6) because Plaintiffs are attempting to assert claims under a series of inapplicable federal and state laws that, *inter alia*, prohibit intentional, destructive acts of computer hacking and interception and that simply cannot be construed to encompass the routine technical protocols between Apps, iOS Devices, and mobile advertising and analytics providers.

### 1.     Plaintiffs' Claim For Violation Of The Computer Fraud And Abuse Act Fails As A Matter Of Law

Plaintiffs' first cause of action in which the Mobile Industry Defendants are named as defendants (the second cause of action asserted in the Complaint) purports to state a claim for violation of a federal criminal statute, the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030).  Initially enacted in 1984, the CFAA is an anti-hacking statute that criminalizes different kinds of computer hacking, such as "intentionally access[ing] a computer without authorization or

Gibson, Dunn & Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

exceed[ing] authorized access, and thereby obtain[ing]— . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).  Plaintiffs' CFAA claim fails as a matter of law for three distinct reasons.

First, Plaintiffs are required to allege that they suffered "damage or loss by reason of a violation of this section" *and* that they suffered at least $5,000 in economic damages in a one-year period as a result of Defendants' actions.  *See* 18 U.S.C. §§ 1030(g) & (c)(4)(A)(i)(I).  They fail to do so.  "Loss" under the CFAA is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).  "Damage" is defined as "impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).  Beyond formulaic recitations, *see* Compl. ¶¶ 128-32, the Complaint alleges neither (1) that Plaintiffs incurred any costs in responding to or as a result of the alleged unauthorized access, nor (2) that Plaintiffs' devices, data, or information were impaired or degraded.

Additionally, even if the Court were to conclude that Plaintiffs had suffered some *de minimis* "damage" or "loss," Plaintiffs have failed to allege facts that show or suggest that they suffered $5,000 in economic damages in a one-year period, even collectively.  "Economic damages" in the context of the CFAA refer to instances in which "an individual or firm's money or property are impaired in value, or money or property lost, or money [was] spent to restore or maintain some aspect of a business affected by a violation." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004).  The alleged collection of Plaintiffs' "personal information" supports none of these.  In *In re DoubleClick Privacy Litigation*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), for instance, the court dismissed a CFAA claim predicated on a theory of damage similar to what is alleged here, explaining:

> [A]lthough demographic information is valued highly . . . the value of its collection has never been considered an economic loss to the subject.  Demographic information is constantly collected on all consumers by marketers, mail-order catalogues and retailers.  However, we are unaware of any court that has held the value of this

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

18

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

collected information constitutes damage to consumers or unjust enrichment to collectors.  Therefore, it appears to us that plaintiffs have failed to state any facts that could support a finding of economic loss from DoubleClick's alleged violation of the CFAA.

*Id.* at 525.

Indeed, courts routinely reject so-called "privacy" claims brought under the CFAA for the very reason that, even if plaintiffs could show economic damages, plaintiffs cannot meet the $5,000 damage threshold.  *See, e.g., id.* at 525-26 (holding that even assuming "some value could be placed on [plaintiffs' alleged] losses . . . plaintiffs have failed to allege facts that could support the inference that the damages and losses plaintiffs incurred from [defendant's] access to any particular computer, over one year's time, could meet [the $5,000] damage threshold); *In Re Zynga Privacy Litig.*, No. C-10-04680 JW, at *5-6 (dismissing CFAA claim with prejudice where "Plaintiffs offer[ed] no legal authority in support of the theory that personally identifiable information constitutes a form of money or property," and therefore "Plaintiffs fail[ed] to allege monetary damage or loss," much less satisfy the CFAA's $5,000 threshold); *La Court*, 2011 WL 1661532, at *6 ("Plaintiffs at the very least have failed to plausibly allege that they and the putative class—even in the aggregate—have suffered $5,000 in economic damages in a one year period as a result of [defendant's] actions.").

Second, Plaintiffs' CFAA claim fails as a matter of law because Plaintiffs cannot allege that the Mobile Industry Defendants accessed their iOS Devices "without authorization."  18 U.S.C. §§ 1030(a)(2) & (5).  Just the opposite, Plaintiffs acknowledge (i) that any alleged collection of their "personal information" resulted from Apps they voluntarily downloaded, and (ii) that they received specific notice as the result of Apple's disclosures that their "information [might be] collected by third parties, which may include such things as location data or contact details," and that they should "learn about the privacy practices of those third parties[,]" which "governed" the collection of such data.  Beringer Decl., Exh. A.  Accordingly, Plaintiffs cannot plausibly allege that Defendants accessed their iOS Devices "without authorization," nor do they have any basis to allege that Defendants "exceed[ed] authorized access."  *See, e.g.*, *In re Apple & ATTM Antitrust Litig.*, 2010 WL 3521965, at *7 (N.D. Cal. July 8, 2010) ("Voluntary installation runs counter to the notion that the alleged act was a trespass and to CFAA's requirement that the alleged act was 'without

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

authorization' . . . .").  Furthermore, "the legislative history confirms that the CFAA was intended to prohibit electronic trespassing, not the subsequent use or misuse of information," *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008), so Plaintiffs' speculative allegations about what may have been done with any acquired information are wholly irrelevant.[5]

Finally, Plaintiffs' CFAA claim should be rejected because the CFAA was never intended to criminalize standard industry practices, such as those alleged by Plaintiffs here, or to provide a vehicle for creative plaintiffs' lawyers to challenge the use of widespread technical protocols in court.  Rather, the CFAA was intended to combat destructive computer hacking, something Plaintiffs do not and could not possibly allege here.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) ("The [CFAA] was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality[.]"); *Shamrock Foods*, 535 F. Supp. 2d at 965-66 ("[T]he legislative history supports a narrow view of the CFAA. . . .  The general purpose of the CFAA 'was to create a cause of action against computer hackers (e.g., electronic trespassers).' . . .  Thus, the conduct prohibited is analogous to that of 'breaking and entering' rather than using a computer . . . in committing the offense. . . .  Simply stated, the CFAA is a criminal statute focused on criminal conduct.  The civil component is an afterthought.") (internal citations omitted).

### 2.    Plaintiffs Fail To State A Claim Under California's Computer Crime Law

Plaintiffs also attempt to state a claim against Defendants for violating another *criminal* statute, specifically Section 502 of the California Penal Code.  Like the CFAA, Section 502 was enacted to prevent the knowing unauthorized access of computer systems and theft or alteration of computer data and has no applicability here.  *See People v. Gentry*, 234 Cal. App. 3d 131, 141 n.8 (1991).  Section 502 permits *civil* suit if, and only if, a computer system is accessed "without permission" by an outsider who thereby causes the victim some "damage or loss."  Cal. Penal Code § 502(e); *see also* Cal. Penal Code §§ 502(c) & (b)(10).

---

[5]    Additionally, to the extent that Plaintiffs attempt to rely on subsection (a)(5)(A) of the CFAA, Plaintiffs have failed to allege that Defendants "caus[ed] damage" to their iOS Devices, much less that they did so "intentionally."  18 U.S.C. § 1030(a)(5)(A).

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

Plaintiffs' § 502 claim fails for the same reasons their CFAA claim does.  First, Plaintiffs have not made a plausible allegation of "damage or loss" as a result of Defendants' alleged actions.  *See* Section V.C.1, *supra*.  Second, the applicable provisions of the statute require that the alleged violator act "without permission," which Defendants did not do.  *See* Cal. Penal Code § 502(c)(1)-(8) & (b)(10).  Indeed, Chief Judge Ware has held that a defendant acts "without permission" under § 502 only when he "circumvent[s] *technical barriers* to gain access to a computer," *In re Facebook Privacy Litig.*, 2011 WL 2039995, at *8 (emphasis added), something Plaintiffs do not, and cannot in good faith, allege.  Finally, like the CFAA, the statute was designed to target computer hackers.  *See, e.g.*, *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of 'hacking' or breaking into a computer.").  Accordingly, the claim fails as a matter of law.  *See id.*[6]

### 3.    Plaintiffs Fail To State A Claim For Trespass To Chattels

"[T]he tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered.'"  *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003).  "In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff."  *eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000) (citations omitted).  Plaintiffs here cannot plausibly make either allegation.

First, as explained above, while the Mobile Industry Defendants do not admit that the alleged actions occurred, if they did occur, those actions were not "without authorization."  Moreover, Defendants did not interfere with Plaintiffs' "possessory interest" in their computer systems, *i.e.*,

---

[6]  Subsection 502(c)(8) is the only pertinent provision that does not require a defendant to act "without permission," but that provision—which is aimed at computer viruses and worms—is plainly not implicated by the conduct alleged.  *See In re Facebook Privacy Litig.*, 2011 WL 2039995, at *8 n.11.

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

their iOS Devices.  Plaintiffs do not, and cannot, allege that they lost possession or use of their iOS Devices or any significant portion of their iOS Devices, as is required to state a claim for trespass to chattels.  *See Intel*, 30 Cal. 4th at 1357 ("Short of dispossession, personal injury, or physical damage . . . intermeddling is actionable only if the chattel is impaired as to its condition, quality, or value, or . . . the possessor is deprived of the use of the chattel for a substantial time.  In particular, an actionable deprivation of use must be for a time so substantial that it is possible to estimate the loss caused thereby.  A mere momentary or theoretical deprivation of use is not sufficient unless there is a dispossession . . . .") (citations and quotations omitted).

Second, Plaintiffs have failed to plausibly allege that they were damaged in any way by the alleged conduct of the Mobile Industry Defendants.  As explained by the *Intel* court:

> [U]nder California law the [trespass to chattels doctrine] does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning.  Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.

*Id.* at 1347.  Indeed, as another court in this Circuit has noted, "scholars and practitioners alike have criticized the extension of the trespass to chattels doctrine to the internet context, noting that this doctrinal expansion threatens basic internet functions (i.e., search engines) and exposes the flaws inherent in applying doctrines based in real and tangible property to cyberspace . . . ."  *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289, at *3 (C.D. Cal. Mar. 6, 2003) (holding that unless there is some "tangible interference with the use or operation of the computer" or "actual dispossession of the chattel for a substantial time (not present here), the elements of the tort have not been made out").  In sum, Plaintiffs' claim of trespass to chattels fails as a matter of law.

### 4.    Plaintiffs Fail To State A Claim Under California's Unfair Competition Law

As discussed above, Plaintiffs do not have standing to maintain a UCL claim because they have not suffered any injury in fact and have not lost money or property.  Even if they had, the claim still would fail because Plaintiffs do not allege facts that could support a finding that the alleged conduct is "unlawful, unfair or fraudulent."  Cal. Bus. & Prof. Code § 17200.

22

a.      **Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Unlawful Business Practice**

Plaintiffs allege that the Mobile Industry Defendants' conduct is "unlawful" because it allegedly runs afoul of the CFAA and California's Computer Crime Law.  *See* Compl. ¶ 187.  As explained above, those claims are fatally deficient.  Accordingly, alleged violations of these statutes cannot satisfy the "unlawful" prong of the UCL.  *See, e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-53 (9th Cir. 2008) (affirming dismissal of UCL claim because alleged conduct was not independently unlawful); *Avila v. Countrywide Home Loans*, 2010 WL 5071714, at *6 (N.D. Cal. Dec. 7, 2010) (Koh, J.) (dismissing a UCL claim premised on a violation of an underlying law for which plaintiff had failed to state a claim); *Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.").[7]

b.      **Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Unfair Business Practice**

Plaintiffs' allegation that the Mobile Industry Defendants have violated the "unfair" prong of the UCL also fails.  Although courts are divided as to what constitutes an "unfair" activity under the UCL, Plaintiffs make no attempt to plead facts that demonstrate "unfair" conduct under any definition.  First, Plaintiffs have pleaded no facts that plausibly suggest that the Mobile Industry Defendants' actions "offend an established public policy [or that they are] immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *McDonald v. Coldwell Banker*,

---

[7]   Plaintiffs' allegations that "Defendants" violated California's False Advertising Law (Business and Professions Code § 17500, *et seq.*) and the Consumer Legal Remedies Act cannot logically be interpreted as applying to the Mobile Industry Defendants (as opposed to Apple) because Plaintiffs do not identify *any* advertising by the Mobile Industry Defendants nor do they contend they are "consumers" with respect to the Mobile Industry Defendants.  Even if these allegations could be interpreted to apply to the Mobile Industry Defendants, however, the allegations are grounded in fraud, and Plaintiffs have failed to plead any fraud with particularity, as required by Rule 9(b).  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to CLRA and UCL claims where those claims are grounded in fraud).  Similarly, Plaintiffs have failed to allege facts supporting the elements of a claim for violation of the California constitutional right to privacy, upon which they also purport to base their "unlawful" UCL claim: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn & Crutcher LLP

543 F.3d 498, 506 (9th Cir. 2008); *Buena Vista, LLC v. New Res. Bank*, 2010 WL 3448561, at *5 (N.D. Cal. Aug. 31, 2010). In fact, Plaintiffs generally identify no conduct at all beyond that alleged to be "unlawful" under the UCL, which does not support a UCL claim, and Plaintiffs' fleeting references to the right of privacy enshrined in the California Constitution are conclusory and fail to show how the Mobile Industry Defendants' alleged conduct could violate that provision.

Second, Plaintiffs' allegations of unfairness are not "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" in the Mobile Industry Defendants' industry, as would be required to establish "unfairness" under the definition established in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 185-87 (1999). *See, e.g.*, *Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, at *7-8 (N.D. Cal. June 16, 2010) (consumer UCL claims asserting "unfair" practices must be "tethered to some legislatively declared policy"); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239-40 (2007) ("This court . . . has followed the line of authority that also requires the allegedly unfair business practice be 'tethered' to a legislatively declared policy or has some actual or threatened impact on competition."). Because Plaintiffs have provided no details or facts indicating how the Mobile Industry Defendants' conduct is unfair—other than the conclusory allegations contained in paragraphs 190-92 of the Complaint—their claim under the UCL "unfairness" prong should be dismissed. *See, e.g.*, *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, at *19-20 (N.D. Cal. Mar. 22, 2011) (dismissing UCL claim where plaintiffs had failed to show the alleged conduct was "unfair" under any test); *Smith & Hawken, Ltd. v. Gardendance, Inc.*, 2004 WL 2496163, at *5 (N.D. Cal. Nov. 5, 2004) (dismissing UCL claim and finding that "[a plaintiff] alleging unfair business practices under the unfair competition statutes must state with reasonable particularity the facts supporting the statutory elements of the violation").

### c.  Plaintiffs Do Not, And Cannot Plausibly, Allege That Defendants Engaged In Any Fraudulent Business Practice

Finally, Plaintiffs cannot state a claim under the UCL's "fraud" prong—something they attempt to do in a single sentence in paragraph 193 of the Complaint—because they have failed to satisfy the minimal pleading requirements of Rule 8(a), much less plead any alleged fraud with

particularity.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."); *Tobacco II*, 46 Cal. 4th at 326 (the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong").

### 5.      California Does Not Recognize A Claim For Unjust Enrichment

Finally, Plaintiffs' purported "claim" for unjust enrichment against the Mobile Industry Defendants should be dismissed *with prejudice* because, as this Court (among many other courts) has previously recognized, California does not recognize a cause of action for unjust enrichment.  *See Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *17 (N.D. Cal. Oct. 5, 2010) (Koh, J.) ("The Court . . . notes that there is no cause of action for unjust enrichment under California law."); *La Court*, 2011 WL 1661532, at *8 ("This Court agrees with other courts in this district that unjust enrichment is not an independent claim, and hence cannot serve as an independent cause of action.") (citations and internal quotations omitted); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action. . . .  Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract.").  Moreover, even if such a cause of action existed, it would fail because the Mobile Industry Defendants have not received any money or property from Plaintiffs that could somehow be "restored" to Plaintiffs.  *See, e.g.*, *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 WL 5069832, at *9-10 (N.D. Cal. Dec. 7, 2010) (Koh, J.) (noting that some courts "have allowed litigants to seek restitution using an unjust enrichment claim," but finding no restitution warranted and dismissing claim without leave to amend).

### VI.      CONCLUSION

Plaintiffs lack standing to prosecute the present action.  Even if Plaintiffs had standing, their purported claims fail as a matter of law.  Plaintiffs' Complaint should therefore be dismissed.  Moreover, because the Complaint is subject to dismissal not due to minor pleading defects but because it lacks a cognizable legal theory, any attempted amendment would be futile, and Plaintiffs should not be granted leave to amend.  *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming denial of leave to amend when further amendment "would be redundant and futile").

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Dated:  June 20, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/_____
          S. Ashlie Beringer

GAIL E. LEES
S. ASHLIE BERINGER
JOSHUA A. JESSEN
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 849-5300
Facsimile:   (650) 849-5333
glees@gibsondunn.com
aberinger@gibsondunn.com
jjessen@gibsondunn.com

Attorneys for Defendants
FLURRY, INC. and
PINCH MEDIA, INC.

Dated:  June 20, 2011

DURIE TANGRI LLP

By:  _/s/_____
          Michael H. Page

MICHAEL H. PAGE
JOSEPH C. GRATZ
GENEVIEVE ROSLOFF
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone: (415) 362-6666
Facsimile:  (415) 236-6300
mpage@durietangri.com
jgratz@durietangri.com
grosloff@durietangri.com

Attorneys for Defendant
ADMOB, INC.

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

1

2    Dated:  June 20, 2011                DLA PIPER LLP (US)

3                                         By:  /s/
                                              Carter W. Ott

4                                         LUANNE SACKS
                                          CARTER W. OTT
5                                         DLA PIPER LLP (US)
                                          555 Mission Street, Suite 2400
6                                         San Francisco, California 94105
                                          Telephone: (415) 836-2500
7                                         Facsimile:  (415) 836-2501
                                          carter.ott@dlapiper.com
8
                                          Attorneys for Defendant
9                                         MOBCLIX, INC.

10

11   Dated:  June 20, 2011                COOLEY LLP

12                                        By:  /s/
                                              Matthew D. Brown

13                                        MICHAEL G. RHODES
                                          MATTHEW D. BROWN
14                                        COOLEY LLP
                                          101 California Street, 5th Floor
15                                        San Francisco, California 94111
                                          Telephone:  (415) 693-2000
16                                        Facsimile:  (415) 693-2222
                                          rhodesmg@cooley.com
17                                        mbrown@cooley.com

18                                        Attorneys for Defendants
                                          ADMARVEL, INC., erroneously sued as
19                                        AdMarval, Inc., and MILLENNIAL MEDIA
                                          INC., erroneously sued as Mellenial Media
20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

1

Dated:  June 20, 2011                            K&L GATES LLP

2

                                                 By: _/s/_____
3
                                                      Seth A. Gold

4                                                SETH A. GOLD (SBN 163220)
                                                 K&L GATES LLP
5                                                10100 Santa Monica Boulevard, 7th Floor
                                                 Los Angeles, California 90067
6                                                Telephone:  (310) 552-5000
                                                 Facsimile:  (310) 552-5001
7                                                seth.gold@klgates.com

8                                                RACHEL R. DAVIDSON (SBN 215517)
                                                 K&L GATES LLP
9                                                Four Embarcadero Center, Suite 1200
                                                 San Francisco, California  94111
10                                               Telephone:  (415) 882-8200
                                                 Facsimile:  (415) 882-8220
11                                               rachel.davidson@klgates.com

12                                               Attorneys for Defendant
                                                 TRAFFIC MARKETPLACE, INC., erroneously
13                                               sued as TrafficMarketplace.com, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Dated:  June 20, 2011                    MORRISON FOERSTER LLP

                                         By: _/s/_____
                                                    James McCabe

                                         JAMES McCABE
                                         BRYAN WILSON
                                         TERESA BURLISON
                                         MORRISON FOERSTER LLP
                                         755 Page Mill Road
                                         Palo Alto, California 94304
                                         Telephone:  (650) 813-5600
                                         Facsimile:  (650) 494-0792
                                         jmccabe@mofo.com
                                         bwilson@mofo.com
                                         tburlison@mofo.com

                                         MICHAEL L. CHARLSON
                                         MAREN J. CLOUSE
                                         HOGAN LOVELLS US LLP
                                         525 University Avenue, 4th Floor
                                         Palo Alto, California  94301
                                         Telephone:  (650) 463-4000
                                         Facsimile:  (650) 463-4199
                                         michael.charlson@hoganlovells.com
                                         maren.clouse@hoganlovells.com

                                         Attorneys for Defendant
                                         QUATTRO WIRELESS, INC.

## ATTORNEY ATTESTATION

   Pursuant to General Order 45, I, S. Ashlie Beringer, hereby attest that the above-listed
counsel have read and approved the MOTION TO DISMISS FIRST CONSOLIDATED CLASS
ACTION COMPLAINT and consent to its filing in this action.

Dated:  June 20, 2011                    GIBSON, DUNN & CRUTCHER LLP

                                         By: _/s/_____
                                                    S. Ashlie Beringer

101101217.1

MOBILE INDUSTRY DEFENDANTS' MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP