GIBSON, DUNN & CRUTCHER LLP
GAIL E. LEES, SBN 90363
GLees@gibsondunn.com
S. ASHLIE BERINGER, SBN 263977
ABeringer@gibsondunn.com
JOSHUA A. JESSEN, SBN 222831
JJessen@gibsondunn.com
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 849-5300
Facsimile:   (650) 849-5333

Attorneys for Defendants
FLURRY, INC.
PINCH MEDIA, INC.

[Counsel For Additional Mobile Industry
Defendants Listed On Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| In re iPhone Application Litigation | Case No. 10-CV-05878 LHK (PSG) |
|  | **CLASS ACTION** |
|  | **MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST CONSOLIDATED CLASS ACTION COMPLAINT** |
|  | **HEARING**: |
|  | Date: September 1, 2011 |
|  | Time: 1:30 p.m. |
|  | Place: Courtroom 4 |
|  | Judge: The Honorable Lucy H. Koh |

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.......................................................... 1

4

II.     ARGUMENT ....................................................................................................................... 2

5

A.     Plaintiffs Lack Standing To Pursue Their Claims ........................................ 2

6

1.     Plaintiffs Lack Article III Standing.................................................. 2

7

2.     Plaintiffs Lack Standing Under California's Unfair Competition
                    Law............................................................................................. 6

8

9

B.     The Complaint's Allegations Against The Mobile Industry Defendants
              Are Insufficient Under Rule 8(a) ................................................................ 8

10

C.     Each Of Plaintiffs' Separate Claims Against The Mobile Industry
              Defendants Fails To State A Claim............................................................ 10

11

12

1.     Plaintiffs' Claim For Violation Of The Computer Fraud And
                    Abuse Act Fails As A Matter Of Law ............................................ 10

13

2.     Plaintiffs Fail To State A Claim Under California's Computer
                    Crime Law ................................................................................... 12

14

15

3.     Plaintiffs Fail To State A Claim For Trespass To Chattels............................ 13

16

4.     Plaintiffs Fail To State A Claim Under California's Unfair
                    Competition Law.......................................................................... 14

17

5.     California Does Not Recognize A Claim For Unjust Enrichment.................. 15

18

III.    CONCLUSION .................................................................................................................. 15

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

i

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ........................................................................................ 10, 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................. 11

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009) ..................................................................................... 5

*Bova v. City of Medford,*
564 F.3d 1093 (9th Cir. 2009) .................................................................................... 4

*Cohen v. Facebook, Inc.,*
2011 WL 3100565 (N.D. Cal. June 28, 2011) ........................................................... 7

*Dodaro v. Std. Pacific Corp.,*
2010 WL 1330889 (C.D. Cal. Apr. 1, 2010) .............................................................. 4

*Doe I v. AOL, LLC,*
719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..................................................................... 7

*Hepting v. AT&T Corp.,*
439 F. Supp. 2d 974 (N.D. Cal. 2006) ....................................................................... 5

*In re Apple & AT&TM Antitrust Litig.,*
2010 WL 3521965 (N.D. Cal. July 8, 2010) ............................................................ 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ..................................................................... 9

*In re DoubleClick Privacy Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ...................................................................... 15

*In re Facebook Privacy Litig.,*
2011 WL 2039995 (N.D. Cal. May 12, 2011) ........................................... 6, 8, 12, 13

*In re Google Inc. Street View Elec. Commc'n Litig.,*
2011 WL 2571632 (N.D. Cal. June 29, 2011) ........................................................... 7

*In re Providian Fin. Corp. ERISA Litig.,*
2002 WL 31785044 (N.D. Cal. Nov. 14, 2002) ......................................................... 9

*Intel Corp. v. Hamidi,*
30 Cal. 4th 1342 (2003) ............................................................................................ 13

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) .................................................................................. 15

*La Court v. Specific Media, Inc.,*
2011 WL 1661532 (C.D. Cal. April 28, 2011) ....................................................... 5, 6

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Lee v. Capital One Bank,*
   2008 WL 648177 (N.D. Cal. Mar. 4, 2008) ......................................................... 4

*Levitt v. Yelp! Inc.,*
   C 10-1321 MHP (N.D. Cal. Mar. 22, 2011) ...................................................... 15

*Lewis v. Casey,*
   518 U.S. 343 (1996) ............................................................................................ 3

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................................... 3, 4, 6

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) .............................................................................. 9

*Nevis v. Wells Fargo Bank,*
   2007 WL 2601213 (N.D. Cal. Sept. 6, 2007) ..................................................... 8

*Pac. Aerospace & Elecs., Inc. v. Taylor,*
   295 F. Supp. 2d 1188 (E.D. Wash. 2003) ......................................................... 12

*Starr v. Sony BMG Music Entm't,*
   592 F.3d 314 (2d Cir. 2010) ............................................................................... 9

*Waste Mgmt. of N. Am., Inc. v. Weinberger,*
   862 F.2d 1393 (9th Cir. 1988) ............................................................................ 6

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 14

Cal. Penal Code § 502(b)(10) ............................................................................... 13

Cal. Penal Code § 502(c)(1)-(8) ..................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 8(a)(2) .......................................................................................... 2

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' prolix Opposition highlights the two essential failings of their Complaint:  it contains not a single factual allegation of injury to any Plaintiff, and it contains not a single factual allegation of any act by any Mobile Industry Defendant at all, much less any act that caused any injury.  Indeed, like the Complaint itself, the Opposition (1) makes no attempt to differentiate among the eight Mobile Industry Defendants (whom Plaintiffs acknowledge engage in a variety of different types of business), (2) fails to identify a single App downloaded by a single named plaintiff (which is the sole means through which Plaintiffs allege their unspecified "personal information" was collected by the Mobile Industry Defendants), (3) fails to identify a single relationship between a single Mobile Industry Defendant and a single App developer (much less an App developer whose App was downloaded  by a named plaintiff), (4) fails to explain what "personal information" was collected about any named plaintiff (or which company supposedly collected the information), and (5) fails to provide a single specific detail or example of any economic harm or any other type of injury suffered by any named plaintiff.  Plaintiffs' Opposition thus confirms what was already apparent from their Complaint:  Rather than filing suit against specific defendants who allegedly caused specific harm to specific plaintiffs in alleged violation of some legal duty (*i.e.*, rather than presenting the Court with a "case or controversy"), Plaintiffs' Complaint is nothing more than an amorphous policy critique of the core business model of the mobile application industry.  Plaintiffs acknowledge as much when they insist that the practices they complain of here are "simply wrong—wrong for the class, and bad for our society."  Opp. at 1.  If Plaintiffs genuinely believe that to be true, they should lobby Congress or the California legislature to prohibit the alleged practices.  Under *existing* federal and state law, the alleged practices simply are not unlawful, and no one has been harmed by them here.

The Complaint must be dismissed for each of the three reasons set forth in the Mobile Industry Defendants' Motion.  First, despite Plaintiffs' conclusory allegations to the contrary, no one has suffered (or even alleged) an injury in fact—not the named plaintiffs and not unnamed members of the putative class.  Certainly, if someone actually had been harmed, Plaintiffs could provide an example of that alleged harm.  But they have not, and they cannot; instead, they speak only in generalities that are plainly insufficient to pass Article III muster.  Moreover, Plaintiffs' entire theory of injury here—that

1  consumers are somehow harmed by the alleged collection of their unspecified "personal information"—

2  simply has no basis in law and has been consistently rejected by courts.

3       Second, however Rule 8(a) may have been construed in a pre-*Twombly/Iqbal* era (and Plaintiffs

4  rely upon a host of pre-*Twombly/Iqbal* case law), plaintiffs today simply cannot lump together eight

5  unrelated defendants, announce "they [all] engaged in the *same* wrongful conduct" (Opp. at 24), provide

6  no further details, and still satisfy Rule 8(a)'s requirement of "*showing* that the pleader is entitled to

7  relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Plaintiffs' *en masse* pleading is insufficient.

8       Finally, none of Plaintiffs' five claims against the Mobile Industry Defendants states a claim

9  upon which relief can be granted. Plaintiffs' contention that the practices alleged here violate two

10 criminal statutes (the CFAA and California's Computer Crime Law)—statutes that by their very nature

11 must be strictly construed to pass constitutional muster—is utterly without support, as even a cursory

12 examination of those statutes and their interpretative case law makes abundantly clear. Plaintiffs' other

13 claims also fail. Plaintiffs have no standing under California's Unfair Competition Law because as

14 courts (including several courts in this District) have repeatedly held, the collection of "personal

15 information" does not constitute "lost money or property" under the UCL. Plaintiffs simply ignore the

16 mountain of case law on this point. But even if Plaintiffs could establish standing under the UCL,

17 Plaintiffs have pled no actual "unfair competition" here. Finally, Plaintiffs' common law "trespass to

18 chattels" claim fails under well-established California law (including the California Supreme Court's

19 decision in *Intel*), and California does not recognize a claim for "unjust enrichment" (of which there has

20 been none, in any event), so that claim fails, as well.

## II.       ARGUMENT

### A.       Plaintiffs Lack Standing To Pursue Their Claims

#### 1.       Plaintiffs Lack Article III Standing

24       Plaintiffs' standing argument boils down to two assertions, the first legal and the second

25 factual: (1) "Injury-in-fact is not Mount Everest," and an "identifiable trifle" of injury is sufficient

26 under Article III (Opp. at 6), and (2) "Plaintiffs do allege and explain that 'they themselves were

27 injured' and do so with great detail and frequency" (Opp. at 8). The Mobile Industry Defendants do

28

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

not take issue with the applicable legal standard, but it does not help Plaintiffs here, because Plaintiffs do not (and cannot) point to a single, concrete example of harm.

The Complaint mentions five named plaintiffs:  Anthony Chiu; Dustin Freeman; Jonathan Lalo; Jared Parsley; and Daniel Rodimer.  Compl. ¶¶ 8-13.  These individuals are mentioned at the outset of the Complaint and never again.  Plaintiffs' counsel are well aware that at least one named plaintiff must have standing for the Court to have subject-matter jurisdiction over this putative class action, yet the Complaint does not allege how any of these named plaintiffs was harmed.  Take Mr. Chiu, for example—what specific harm did he suffer?  What "personal information" of his was collected, and how was he personally harmed by that collection?  The Complaint does not say.  What about Mr. Freeman.  What was *his* harm?  Was his personal iOS Device damaged somehow by the alleged actions of one of the Mobile Industry Defendants or Apple?  If so, how was it damaged, and who damaged it?  Once again, the Complaint is silent.  And precisely the same thing is true of the three remaining named plaintiffs:  the Complaint is devoid of a single detail about how *they* allegedly were harmed.  This complete absence of "concrete and particularized" harm to a single named plaintiff mandates dismissal.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

Plaintiffs cannot skirt this constitutional requirement by lumping the five named plaintiffs together under the moniker "Plaintiffs" (much as they have done with the eight Mobile Industry Defendants) and then making generic, fact-free allegations about how the "Plaintiffs" have been harmed.  If someone has been harmed, Plaintiffs should specify whom (and how).  Any other standard would strip all meaning from the requirement that "named plaintiffs who represent a class 'must allege and show that *they personally have been injured*, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added) (citations omitted).

Moreover, the "injury" alleged here—not to the named plaintiffs, but to unnamed members of the putative class—boils down to a completely theoretical and highly abstract assertion that a person somehow is harmed when their unspecified "personal information" is collected by a third party.  In an effort to give their injury allegations a veneer of substance, Plaintiffs include seven bullet points in

their Opposition that purport to describe the different types of injuries they have pled.  *See* Opp. at 8-9.  Examined closely, however, all of the bullet points essentially say the same thing in slightly different ways—namely, that Plaintiffs somehow have been deprived of unspecified "personal information."  Plaintiffs contend that (i) they "have lost money and property—specifically, *personal information*," (ii) Defendants have "misappropriated their *personal information*, which . . . has discernable value as an asset in the information marketplace," (iii) "the scarcity of consumer information increases its value, and therefore, by taking and propagating their *personal information*, the [Mobile Industry Defendants] caused a diminution in its value," (iv) the Mobile Industry Defendants "raised the price consumers paid to use the app . . . by extracting their undisclosed premium in the form of *Plaintiffs' information*," (v) "Plaintiffs were harmed . . . in that their *personal private information* was procured," and (vi) Plaintiffs were "harmed by the loss of opportunity of entering into value-for-value exchanges for their *personal private information* in transparent transactions."  *Id.* (emphasis added).

Plaintiffs' theories might make for interesting reading in an academic journal, but they come nowhere close to establishing the "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," injury required for Article III standing.  *Lujan*, 504 U.S. at 560-61.  Indeed, the Complaint never once alleges that a named plaintiff (or indeed, anyone) attempted to market or sell his personal information at all, much less that he received a lower price for that information than he would have received but for the alleged actions of the Mobile Industry Defendants.  Likewise, the Complaint fails to identify a single "value-for-value exchange" that any person, including the named plaintiffs, was unable to enter into as a result of the actions alleged in the Complaint.  Thus, Plaintiffs have failed to plead a cognizable injury in fact.  *See, e.g., Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (if a claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," then "the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing"); *Dodaro v. Std. Pacific Corp.*, 2010 WL 1330889, at *4 (C.D. Cal. Apr. 1, 2010) (rejecting "reduced-value theory" where plaintiff still owned his house because any loss would have been conjectural); *Lee v. Capital One Bank*, 2008 WL 648177, at *4 (N.D. Cal. Mar. 4, 2008) (dismissing

4

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

complaint for lack of Article III standing where plaintiff did not allege that defendants deprived him of use of any of the agreed upon features of his credit card).

Plaintiffs' attempts to distinguish *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) and *La Court v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)—fall flat.  In *Birdsong*, as Plaintiffs acknowledge, the plaintiffs pled "conjectural" and "hypothetical" injuries, which is precisely what Plaintiffs here have done.  In *La Court*—a case in which the plaintiffs made "injury" allegations virtually identical to those made here—it is true that the plaintiffs referenced facts in their brief that were not contained in their complaint, including "reference[s] to a number of academic articles concerning the nature of 'Internet business models ... driven by consumers' willingness to supply data about themselves.'"  *Id.* at *4 (citing plaintiffs' brief).  But the failure to include this "quasi-philosophical" material in their pleading was not the basis for Judge Wu's ruling that plaintiffs had failed to allege a basis for Article III standing.  Rather, Judge Wu stated that he "recognize[ed] the viability *in the abstract* of such concepts as 'opportunity costs,' 'value-for-value exchanges,' 'consumer choice,' and other concepts referred to in the Opposition," but made it clear that "**what Plaintiffs really need to do is to give some particularized example of their application in this case**."  *Id.* (emphasis added).  This Court should require no less of Plaintiffs here.

In the face of these decisions rejecting Plaintiffs' nonspecific theories of "injury" as a basis for Article III standing, Plaintiffs do not cite *a single case* finding that the mere "collection" of "personal information" constitutes an "injury in fact" under Article III—and there is none.  Plaintiffs' suggestion that *Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974 (N.D. Cal. 2006) involved "similar issues" to those alleged here (Opp. at 11) is belied by the actual facts of that case, which involved claims that AT&T had collaborated with the federal government to conduct a warrantless surveillance program that illegally recorded the confidential communications of millions of customers, in violation of the First and Fourth Amendments to the U.S. Constitution and several federal laws that are not asserted here.  Contrary to Plaintiffs' contention, the court in *Hepting* did not find that plaintiffs were injured by the "collect[ion] of personal information" (Opp. at 11), and instead found that plaintiffs had pled concrete allegations of injury "[t]hroughout the complaint" detailing AT&T's interception of "detailed communications records about millions of its customers,

1   including [p]laintiffs and class members" and "disclos[ure] to the government [of] the contents of its

2   customers' communications." *Id.* at 1000.[1]

3          Additionally, unlike in *Hepting,* Plaintiffs have not pled some uniform harm inflicted by the

4   Mobile Industry Defendants on some class of persons that can be imputed to the named plaintiffs.  In

5   fact, Plaintiffs have not even identified the Apps they downloaded, much less identified the specific

6   Mobile Industry Defendants with which those Apps did business and who therefore allegedly

7   collected their unspecified "personal information."  For this reason, Plaintiffs also cannot establish

8   that any alleged injury is "fairly . . . traceable to the challenged action of [a specific] defendant,"

9   *Lujan*, 504 U.S. at 560-61, and they therefore lack standing for that reason, as well.

10         Finally, Plaintiffs half-heartedly contend that their iOS Devices "have diminished in value

11  and performance, and the resources of their [iOS Devices], such as Internet connectivity, have been

12  improperly consumed."  Opp. at 1.  Again, however, these conclusory assertions are unaccompanied

13  by the "concrete and particularized" facts necessary to establish standing.  Indeed, the Complaint is

14  entirely devoid of specific facts identifying even a single iOS Device (belonging to a named plaintiff

15  or otherwise) that was purportedly damaged by the Mobile Industry Defendants' alleged conduct.  To

16  the extent the Complaint contains *any* allegations concerning diminished performance or capabilities

17  of iOS Devices, these allegations are entirely generic in nature and cannot establish actual or non-

18  speculative injury-in-fact.  *See La Court*, 2011 WL 1661532, at *5 ("If Plaintiffs are suggesting that

19  their computers' performance was compromised . . . they need to allege facts showing that is true.").

20         **2.       Plaintiffs Lack Standing Under California's Unfair Competition Law**

21         Even if Plaintiffs' Complaint could pass Article III muster (and it does not), the Complaint

22  fails to allege any "lost money or property," and the UCL claim at a minimum must therefore be

23  dismissed for lack of statutory standing.  As explained in the Mobile Industry Defendants' opening

24

25  [1] Plaintiffs' citation to *In re Facebook Privacy Litigation*, 2011 WL 2039995 (N.D. Cal. May 12, 2011) is equally unavailing.  In that case, the court founded its decision that plaintiffs had alleged Article III standing on a finding that the plaintiffs had alleged a "violation of their statutory rights under the Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*"—which does not require a showing of injury and which is not alleged here.  *Id.* at *4.  Moreover, it is well-settled that "[a]bsent injury, a violation of a statute gives rise merely to a generalized grievance but not to standing."  *Waste Mgmt. of N. Am., Inc. v. Weinberger*, 862 F.2d 1393, 1398 (9th Cir. 1988).

26

27

28

6

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

brief, numerous courts, including the *Facebook* court cited by Plaintiffs in support of their Article III argument, have definitively held in the context of "privacy" claims that "personal information" does not constitute property for purposes of a UCL claim.  *See* Mot. at 12 (collecting cases).  It is impossible for Plaintiffs to distinguish these cases, so instead they ignore them and cite general UCL case law (*Kwikset*, *Korea Supply*, and so forth) that does not address the specific issue before the Court.  But these cases in no way support the notion that the alleged collection of  "personal information" can  constitute "lost money or property" under the UCL, and do not overcome the numerous cases to the contrary—including  two additional cases decided in this District in the past several weeks.  *See Cohen v. Facebook, Inc*., 2011 WL 3100565, at *7 (N.D. Cal. June 28, 2011) (dismissing UCL claim involving Facebook's  "Friend Finder" service for lack of standing "[i]n light of the requirement to show a loss of money or property"); *In re Google Inc. Street View Elec. Commc'n Litig*., 2011 WL 2571632, at *17 (N.D. Cal. June 29, 2011) (holding that the "interception of data packets that a plaintiff has sent over a wireless network are not lost property for purposes of determining Proposition 64 standing").

Plaintiffs' reliance on *Doe I v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) is misplaced.  In *AOL*, as Plaintiffs readily admit, the plaintiffs brought suit under the UCL and other statutes based on AOL's *public disclosure of Internet search records* that included "highly sensitive personal information belonging to 658,000 of its members," including "members' names, addresses, telephone numbers, credit card numbers, social security numbers, financial account numbers, user names and passwords . . . [and] information regarding members' personal issues, including sexuality, mental illness, alcoholism, incest, rape, adultery and domestic violence."  *Id.* at 1111.  The *AOL* court noted that this highly sensitive private information was disclosed despite AOL's continual assurances to its members of the privacy and security of their personal information.  *Id.*  The *AOL* court did not separately analyze plaintiffs' allegations of injury in the context of plaintiffs' UCL claim (rather, it analyzed the injury allegations in the context of plaintiffs' CLRA claim and then incorporated that analysis into the UCL section of the opinion), but even if the opinion could be considered to have undertaken a plenary "lost money or property" analysis, the public disclosure of highly sensitive personal information across the Internet, accessible to anyone worldwide, presents a vastly different

scenario than the factual circumstances of this case.  Additionally, in distinguishing *AOL*, the *Facebook* court noted that it was significant that AOL subscribers had "*paid fees for* [the defendant's] service."  *In re Facebook Privacy Litig.*, 2011 WL 2039995, at *7 (citing *AOL* at 1113) (emphasis added by *Facebook* court).  But Plaintiffs here do not allege that they paid any fees to the Mobile Industry Defendants, nor could they.  "The court's opinion in *AOL* does not stand for the broad proposition that personal information of any kind 'equates to money or property.'"  *Id.*

## B.    The Complaint's Allegations Against The Mobile Industry Defendants Are Insufficient Under Rule 8(a)

Plaintiffs acknowledge that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (Opp. at 23) (quoting *Twombly*), but that is precisely the nature of Plaintiffs' allegations against the Mobile Industry Defendants:  those allegations, no matter what Plaintiffs say, simply do not plead any actual *facts* regarding which specific Mobile Industry Defendants are alleged to have done what to whom.  As explained in detail in the Mobile Industry Defendants' Motion, the Complaint does not even identify the Apps the named plaintiffs allegedly downloaded—much less the information supposedly collected through those Apps, by any specific company—and it is therefore impossible for the Mobile Industry Defendants (whom Plaintiffs acknowledge engage in *different* types of business with *different* App developers) to know what they are alleged to have done wrong and to respond accordingly.

It is no response for Plaintiffs to say that "[t]he Complaint differentiates between conduct committed by Apple and conduct committed by the [Mobile Industry Defendants]" (Opp. at 24)—as if including specific allegations against *one* defendant somehow excuses Plaintiffs from their obligations to make plausible allegations regarding the other *eight* defendants.  *See, e.g., Nevis v. Wells Fargo Bank,* 2007 WL 2601213, at *6 (N.D. Cal. Sept. 6, 2007) ("The court notes that plaintiff has made no attempt in her complaint to set forth specific facts as to Gateway, lumping it together with other defendants.  As to some of those defendants there are specific facts alleged, but that is not sufficient to state claims against another defendant, in this case Gateway.").  Similarly, as clearly established by the case law cited in the Mobile Industry Defendants' Motion (Mot. at 15-17)—case law that Plaintiffs, with one exception, make no attempt to distinguish—Plaintiffs are not excused

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

from their obligations under *Twombly* and *Iqbal* by asserting that the Mobile Industry Defendants "are grouped together because Plaintiffs have alleged that they engaged in the *same* wrongful conduct." Opp. at 24. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996) ("Given the number and diversity of named defendants and the breadth of the allegations, claims which vaguely refer to 'defendants' or 'other responsible authorities' will not suffice.").

Plaintiffs' citations to *Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) and *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011 (N.D. Cal. 2010) are misplaced. The complaints in both of those cases concerned antitrust/conspiracy claims that—unlike those here—hinged on allegations of a common scheme that were much more detailed than the vacuous allegations contained in the instant Complaint. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d at 1019 ("Courts in this district do not require plaintiffs in complex, multinational, *antitrust* cases to plead detailed, defendant-by-defendant allegations; instead they require plaintiffs 'to make allegations that plausibly suggest that each Defendant participated in the alleged *conspiracy*.'") (citation omitted) (emphasis added).

Finally, Plaintiffs' attempt to distinguish *one* of the *six* relevant cases cited in the Mobile Industry Defendants' Motion (Mot. at 16-17)—a pre-*Twombly* case, no less—fails. Indeed, in *In re Providian Fin. Corp. ERISA Litig.*, 2002 WL 31785044 (N.D. Cal. Nov. 14, 2002), the Court did note that the complaint "lumped the various *classes* of defendants into an undifferentiated mass," but then dismissed the complaint for reasons that apply equally here: "[t]he resulting cause of action [was] so general that it fail[ed] to put the various *defendants* on notice of the allegations against them." *Id.* at *1 (emphasis added).[2]  The same is true of the present Complaint with respect to the Mobile Industry Defendants, especially in a post-*Twombly/Iqbal* era.

---

[2]  While legally irrelevant, there is also no merit to Plaintiffs' suggestion that the Mobile Industry Defendants constitute a single "class" of defendants.  Just the opposite, Plaintiffs themselves acknowledge that the various Mobile Industry Defendants provide different types of services relating to different third-party software applications.  *See* Compl. ¶¶ 15-22, 65.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

**C.**     **Each Of Plaintiffs' Separate Claims Against The Mobile Industry Defendants Fails To State A Claim**

     **1.**     **Plaintiffs' Claim For Violation Of The Computer Fraud And Abuse Act Fails As A Matter Of Law**

Plaintiffs spend eight pages of their brief trying to convince the Court that they have stated a claim for violation of a federal criminal statute—the CFAA.  But they have not, and they cannot.

First, no matter what they claim in their brief, Plaintiffs have not plausibly alleged any "damage" or "loss" within the meaning of the statute—not one penny's worth, much less the $5,000 in one year needed to state a claim under the statute.  As with their other claims, the injury Plaintiffs allege in their CFAA claim is that "by taking and retaining their personal information without their consent, Defendants have caused a diminution of value of such information."  Opp. at 26.  But as noted in the Mobile Industry Defendants' Motion, this very theory of "damage"/"loss" has no support in the statute and was flatly rejected by Chief Judge Ware, who dismissed the plaintiffs' CFAA claim *with prejudice*, in *In Re Zynga Privacy Litigation* less than two months ago.  *See* Mot. at 19; Beringer Decl. (Docket 146), Exh. B.  Plaintiffs make no attempt to distinguish *Zynga*, and with good reason: it cannot be distinguished and is dispositive of Plaintiffs' CFAA claim here.

Well aware of this fatal defect to their CFAA claim, Plaintiffs argue that they also have alleged—"albeit under the trespass claim," they acknowledge (Opp. at 27)—that the Defendants' actions "have resulted in the diversion and consumption of Plaintiff and Class Members' mobile computing resources (such as space, memory, processing cycles, and Internet connectivity) in ways they did not expect and in ways that diminished the utility and performance of their [iOS Devices]."  *Id.*  But Plaintiffs plead no actual *facts* in support of these naked assertions, as they must.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("naked assertion[s]" devoid of "further factual enhancement" are insufficient to state a claim).  Nor do Plaintiffs attempt to link these generic allegations to the challenged conduct of the Mobile Industry Defendants, as opposed to Plaintiffs' use of the actual Apps they admittedly chose to install on their devices.  Moreover, even if these vague and conclusory allegations were accepted in place of facts, the alleged harm still would not meet the

Gibson, Dunn & Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

definition of "damage" or "loss" in the CFAA (and would not add up to $5,000 in any event).  *See* Mot. at 18.[3]  Finally, Plaintiffs cite paragraphs 131 and 177 in their Complaint for the proposition that they "have expended money, time and resources in order to remove the unauthorized program[s] installed on their [iOS Devices]."  Opp. at 28.  The assertion strains credulity—it literally takes a split second to delete an App from an iOS Device—and, more importantly for purposes of the present Motion, the paragraphs that purport to substantiate it are nothing more than "a formulaic recitation of the elements," including a *verbatim* quote from the statute.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs have in fact identified no actual "costs expended . . . to remediate the [alleged] negative effects on their [iOS Devices]" (Opp. at 28), and the Court need not credit Plaintiffs' bald assertions.  Such fact-free allegations obviously "will not do."  *Twombly*, 550 U.S. at 555.[4]

Second, Plaintiffs have failed plausibly to allege that the Mobile Industry Defendants accessed their iOS Devices "without authorization" or that they "exceed[ed] authorized access." Plaintiffs do not and cannot dispute (i) that they themselves authorized each and every App by downloading it to their iOS Devices (something they were not required to do), and (ii) that Apple's disclosures put them on clear notice that their "information [might be] collected by third parties, which may include such things as location data or contact details."  Mot. at 19.  Plaintiffs' attempt to distinguish the recent case of *In re Apple & AT&TM Antitrust Litig.*, 2010 WL 3521965 (N.D. Cal. July 8, 2010) on the basis that "[i]n that case . . . the software itself caused the damage" (Opp. at 31) fails for the simple reason that (i) the Apps themselves *are* software, and (ii) the Apps are the sole means through which Plaintiffs allege they were "tracked" by the Mobile Industry Defendants. Accordingly, by Plaintiffs' own admission, the alleged collection of their "personal information" came about as the result of software they voluntarily downloaded to their iOS Devices.  There is no

---

[3]  Plaintiffs also are mistaken that to reach the $5,000 threshold they can somehow "aggregate" damages allegedly caused by *nine* separate defendants—the eight Mobile Industry Defendants and Apple.  Plaintiffs cite no authority for such a proposition, and there is none.

[4]  Precisely the same thing is true of Plaintiffs' threadbare allegations that the Mobile Industry Defendants "intentionally" or "recklessly" caused damage to their iOS Devices and are therefore liable under Subsections (a)(5)(A) & (B) of the statute.  Opp. at 25-26.  As noted above, Plaintiffs have pled no plausible damage to their iOS Devices.  Similarly, they have failed to plausibly allege—as opposed to just parroting the language of the statute—that any alleged harm to their Devices was done "intentionally" or "recklessly" by the Mobile Industry Defendants.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn & Crutcher LLP

1    legal basis for any assertion by Plaintiffs that they authorized only "part" of the software (*e.g.*, *x* lines

2    of source code, but not *y* lines of source code).

3            Finally, Plaintiffs assert that "[t]he CFAA is no longer a criminal statute designed to target

4    hackers and technology criminals alone" (Opp. at 24), but the case they cite in support of that

5    proposition confirms that "the majority of CFAA cases still involve 'classic' hacking activities," and

6    notes that "*[e]mployers* . . . are increasingly taking advantage of the CFAA's civil remedies to sue

7    former employees and their new companies who seek a competitive edge through wrongful use of

8    information from the former employer's computer system." *Pac. Aerospace & Elecs., Inc. v. Taylor*,

9    295 F. Supp. 2d 1188, 1196 (E.D. Wash. 2003) (emphasis added).  The present case, of course, is

10   neither a hacking case nor a case of employees improperly accessing their former employer's

11   computer system.  Rather, it is a "privacy" case that the statute clearly does not cover.

12          **2.**       **Plaintiffs Fail To State A Claim Under California's Computer Crime Law**

13           Plaintiffs attempt to salvage their second criminal claim (Section 502 of the California Penal

14   Code) by arguing, first, that they have sufficiently alleged "damage and loss" (they have not), and

15   second, that the requirement that a defendant acts "without permission" under § 502 only when he

16   "circumvent[s] *technical barriers* to gain access to a computer," *In re Facebook Privacy Litig.*, 2011

17   WL 2039995, at *8 (emphasis added), applies only when the defendant *initially* had permission to

18   access the device and *then* "subsequently took actions which violated the terms of that

19   authorization." Opp. at 33-34.  The argument is meritless.  The decision in *Facebook* did not turn on

20   any supposed distinction between "initial" access versus a later "violat[ion] [of] the terms of that

21   access." *Id*. at 34.  Indeed, unlike the CFAA, Section 502 does not draw any distinction between

22   access "without authorization" and "exceed[ing] authorized access" but instead speaks only of access

23   "without permission."  Cal. Penal Code § 502(c).  Moreover, the "constitutional notice concerns"

24   underlying the court's opinion in *Facebook* are precisely the same whether the initial access is

25   authorized or not.  As the court stated, "the statute must be read to limit criminal liability to

26   circumstances 'in which a user *gains access* to a computer, computer network, or website to which

27   *access was restricted through technological means*,' since anyone 'applying the technical skill

28   necessary to overcome such a barrier will almost always understand that any *access gained* through

such action is unauthorized.'" *In re Facebook Privacy Litig.*, 2011 WL 2039995, at *7 (emphasis added).  Here, Plaintiffs do not and cannot allege that the Mobile Industry Defendants circumvented any "technical barriers" to gain access to their iOS Devices, so, as in *Facebook*, the Section 502 claim must be dismissed.

Plaintiffs' last-ditch assertion that their Section 502(c)(8) claim should survive because that provision does not require Defendants to act "without permission" is meritless.  Section 502(c)(8) is directed at "computer contaminant[s]," which "include, but are not limited to, a group of computer instructions commonly called *viruses or worms*, that are self-replicating or self-propagating and are designed to contaminate other computer programs or computer data, consume computer resources, modify, destroy, record, or transmit data, or in some other fashion usurp the normal operation of the computer, computer system, or computer network."  Cal. Penal Code § 502(b)(10) (emphasis added).  Plaintiffs' attempt to stretch a criminal provision aimed at combatting computer viruses and worms to encompass standard portions of App software should be rejected by this Court.  Indeed, virtually all software "record[s]" or "transmits information within a computer." *Id.*  But Section 502(c)(8) is not directed at all software; rather, it is aimed at "computer *contaminant[s]*," such as viruses and worms.

### 3.     Plaintiffs Fail To State A Claim For Trespass To Chattels

In support of their "trespass to chattels" claim, Plaintiffs cite several irrelevant cases involving "the transmission of unsolicited e-mails, search robots, web spiders, and other automated-data-collection and electronic scraping devices." Opp. at 41.  But Plaintiffs never address the California Supreme Court's seminal holding in *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003) that this tort "does not encompass . . . an electronic communication that neither damages the recipient computer system nor impairs its functioning." *Id.* at 1347; *see also* Mot. at 21-22.

Plaintiffs argue that "[t]he Complaint in Paragraphs 170-177 contains detailed information explaining how Defendants' conduct did, in fact, impair the condition and value of Plaintiffs' mobile devices." Opp. at 42.  But a review of those paragraphs reveals that they do not plead any actual facts—in fact, they fail to cite a single example of tangible harm to an iOS Device—and instead set forth a generic, conclusory, laundry list of alleged harm, which is insufficient.  *See Iqbal,* 129 S. Ct. at 1949.  None of the cases cited by Plaintiffs—which, by Plaintiffs' own admission, involved

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

malicious tools like "search robots," "scraping devices," and "web spiders"—is to the contrary.
Moreover, Plaintiffs do not allege or attempt to explain how any purported "harm" to their iOS
Devices relates to the Mobile Industry Defendants' supposed collection of unspecified "personal
information," as opposed to the use of Apps Plaintiffs voluntarily installed on their devices.  Indeed,
as noted in the Mobile Industry Defendants' Motion and above, Plaintiffs also cannot establish
trespass here because they authorized the Apps—a point they cannot and do not challenge.

### 4.       Plaintiffs Fail To State A Claim Under California's Unfair Competition Law

As explained above, Plaintiffs do not have standing to maintain a UCL claim because they
have not suffered any injury in fact and have not lost money or property.  But even if Plaintiffs could
establish standing (and they cannot), their UCL claim still fails for lack of any alleged conduct that is
actually "unlawful, unfair or fraudulent."  Cal. Bus. & Prof. Code § 17200.

Plaintiffs' Opposition sets forth a page and a half of background UCL case law and then
baldly asserts—in a few brief sentences—that the Mobile Industry Defendants' actions satisfy each
of the three UCL prongs.  But as explained in the Mobile Industry Defendants' Motion, none of the
alleged "unlawful" conduct states a claim under Rule 12(b)(6), so the Complaint by definition does
not successfully allege a UCL violation under the "unlawful" prong.  *See* Mot. at 23.  So too with the
"unfair" prong.  Plaintiffs assert that "Defendants' conduct satisfies [this prong] because the
systematic disclosures of Plaintiffs' personal information caused actual harm and could not be
avoided when using the device to its full capacity."  Opp. at 39.  This conclusory assertion is belied
by the Complaint's failure to provide even one example of actual harm; moreover, the assertion that
any alleged harm "could not be avoided" is belied by Plaintiffs' undisputed ability to download
Apps, not download Apps, and/or delete Apps at any time and completely as they saw fit.
Additionally, despite Plaintiffs' naked and illogical assertion that "personal data is wholly irrelevant
for the functioning of a particular App" (Opp. at 1), Plaintiffs ignore their own allegations that many
Apps are free or very low cost precisely because of the availability of mobile advertising and
analytics that allow the App developer to support the costs of developing and providing free or low
cost content to users.  *See* Compl. ¶¶ 6, 39, 61-62.  Plaintiffs' allegations plainly are insufficient to
state a claim under the UCL's "unfair" prong.  *See, e.g.*, Beringer Decl. (Docket 146), Exh. C (*Levitt*

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

1  v. Yelp! Inc., No. C 10-1321 MHP, at *19-20 (N.D. Cal. Mar. 22, 2011)) (dismissing UCL claim

2  under "unfair" prong where plaintiffs made "little effort to quantify the extent to which they [had]

3  been harmed" and "only obliquely set forth a theory of unfairness"); Mot. at 23-24.

4       Finally, Plaintiffs' one-sentence allegation that the UCL's "fraud" prong is satisfied in this

5  case fails under both Rule 8(a) and Rule 9(b)—the latter of which, contrary to Plaintiffs' assertion at

6  pages 35 and 36 of their brief (an assertion that cites a handful of California state court cases that

7  have nothing to do with federal pleading standards), fully applies to claims brought under the "fraud"

8  prong of the UCL.  See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

9  Plaintiffs have not identified a single alleged misrepresentation by any of the Mobile Industry

10  Defendants, much less alleged that any Plaintiff relied on such a statement to his detriment.

11       **5.      California Does Not Recognize A Claim For Unjust Enrichment**

12       Plaintiffs acknowledge, as they must, that "this Court . . . has previously found . . . that there

13  [is] no cause of action for unjust enrichment under California law." Opp. at 42.  But in the next

14  breath, Plaintiffs argue that they have "sufficiently stated a cause of action for unjust enrichment by

15  alleging that Defendants received a benefit, and unjust enrichment of the benefit at the expense of

16  plaintiff[s]." Id. at 43.  Plaintiffs' acknowledgement of this Court's prior ruling (which sets forth

17  black letter California law) undermines their argument:  there simply is no claim for unjust

18  enrichment under California law.  At any rate, even if this Court permitted Plaintiffs to plead unjust

19  enrichment as a remedy (for what claim is unclear), as Plaintiffs alternatively suggest, such a remedy

20  would be inapplicable here because, as the DoubleClick court noted over ten years ago, "we are

21  unaware of any court that has held the value of this collected information"—i.e., Plaintiffs' "personal

22  information" here—"constitutes damage to consumers or unjust enrichment to collectors," In re

23  DoubleClick Privacy Litig., 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001), a conclusion reinforced by

24  recent case law in both California state court and this District.  See, e.g., Mot. at 11-12.

25       **III.      CONCLUSION**

26       This Court serves an important gatekeeping function in preventing complaints that fail to

27  allege any cognizable harm, fail to differentiate among multiple defendants, and fail to state any

28  actionable claims from moving forward.  Accordingly, the Complaint should be dismissed.

Dated:  August 3, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/_____
                  S. Ashlie Beringer

GAIL E. LEES
S. ASHLIE BERINGER
JOSHUA A. JESSEN
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 849-5300
Facsimile:   (650) 849-5333
glees@gibsondunn.com
aberinger@gibsondunn.com
jjessen@gibsondunn.com

Attorneys for Defendants
FLURRY, INC. and
PINCH MEDIA, INC.

Dated:  August 3, 2011

DURIE TANGRI LLP

By:  _/s/_____
                  Michael H. Page

MICHAEL H. PAGE
JOSEPH C. GRATZ
GENEVIEVE ROSLOFF
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
Telephone: (415) 362-6666
Facsimile:  (415) 236-6300
mpage@durietangri.com
jgratz@durietangri.com
grosloff@durietangri.com

Attorneys for Defendant
ADMOB, INC.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

Dated:  August 3, 2011                    DLA PIPER LLP (US)

                                          By: _/s/_____
                                                   Carter W. Ott

                                          LUANNE SACKS
                                          CARTER W. OTT
                                          DLA PIPER LLP (US)
                                          555 Mission Street, Suite 2400
                                          San Francisco, California 94105
                                          Telephone: (415) 836-2500
                                          Facsimile:  (415) 836-2501
                                          carter.ott@dlapiper.com

                                          Attorneys for Defendant
                                          MOBCLIX, INC.

Dated:  August 3, 2011                    COOLEY LLP

                                          By: _/s/_____
                                                   Matthew D. Brown

                                          MICHAEL G. RHODES
                                          MATTHEW D. BROWN
                                          COOLEY LLP
                                          101 California Street, 5th Floor
                                          San Francisco, California 94111
                                          Telephone:  (415) 693-2000
                                          Facsimile:  (415) 693-2222
                                          rhodesmg@cooley.com
                                          mbrown@cooley.com

                                          Attorneys for Defendants
                                          ADMARVEL, INC., erroneously sued as
                                          AdMarval, Inc., and MILLENNIAL MEDIA
                                          INC., erroneously sued as Mellenial Media

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Gibson, Dunn &
Crutcher LLP

Dated:  August 3, 2011

K&L GATES LLP

By: _/s/_____
        Seth A. Gold

SETH A. GOLD (SBN 163220)
K&L GATES LLP
10100 Santa Monica Boulevard, 7th Floor
Los Angeles, California 90067
Telephone:  (310) 552-5000
Facsimile:  (310) 552-5001
seth.gold@klgates.com

RACHEL R. DAVIDSON (SBN 215517)
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California  94111
Telephone:  (415) 882-8200
Facsimile:  (415) 882-8220
rachel.davidson@klgates.com

Attorneys for Defendant
TRAFFIC MARKETPLACE, INC., erroneously
sued as TrafficMarketplace.com, Inc.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 10-CV-05878 LHK (PSG)

Dated:  August 3, 2011

MORRISON FOERSTER LLP

By: /s/_____
James McCabe

JAMES McCABE
BRYAN WILSON
TERESA BURLISON
MORRISON FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304
Telephone:  (650) 813-5600
Facsimile:  (650) 494-0792
jmccabe@mofo.com
bwilson@mofo.com
tburlison@mofo.com

MICHAEL L. CHARLSON
MAREN J. CLOUSE
HOGAN LOVELLS US LLP
525 University Avenue, 4th Floor
Palo Alto, California  94301
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
michael.charlson@hoganlovells.com
maren.clouse@hoganlovells.com

Attorneys for Defendant
QUATTRO WIRELESS, INC.

## ATTORNEY ATTESTATION

Pursuant to General Order 45, I, S. Ashlie Beringer, hereby attest that the above-listed counsel have read and approved the MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST CONSOLIDATED CLASS ACTION COMPLAINT and consent to its filing in this action.

Dated:  August 3, 2011

GIBSON, DUNN & CRUTCHER LLP

By: /s/_____
S. Ashlie Beringer

101127271.1

Gibson, Dunn &
Crutcher LLP