| | | |
|---|---|---|
| 1 | JAMES F. McCABE (SBN 104686)<br>JMcCabe@mofo.com | MICHAEL L. CHARLSON (Bar No. 122125)<br>michael.charlson@hoganlovells.com |
| 2 | MORRISON & FOERSTER LLP<br>425 Market Street | MAREN J. CLOUSE (Bar No. 228726)<br>maren.clouse@hoganlovells.com |
| 3 | San Francisco, California 94105-2482<br>Telephone: 415.268.7000 | HOGAN LOVELLS US LLP<br>525 University Avenue, 4th Floor |
| 4 | Facsimile: 415.268.7522 | Palo Alto, California 94301<br>Telephone: 650.463.4000 |
| 5 | BRYAN WILSON (SBN 138842)<br>BWilson@mofo.com | Facsimile: 650.463.4199 |
| 6 | TERESA N. BURLISON (SBN 230854)<br>TBurlison@mofo.com | CHRISTOPHER WOLF (Admitted *Pro Hac Vice*)<br>christopher.wolf@hoganlovells.com |
| 7 | MORRISON & FOERSTER LLP<br>755 Page Mill Road | HOGAN LOVELLS US LLP<br>Columbia Square |
| 8 | Palo Alto, California 94304-1018<br>Telephone: 650.813.5600 | 555 Thirteenth Street, NW<br>Washington, DC 20004 |
| 9 | Facsimile: 650.494.0792 | Telephone: 202.637.5600<br>Facsimile: 202.637.5910 |
| 10 | Attorneys for Defendant<br>APPLE INC. | CLAYTON C. JAMES (Admitted *Pro Hac Vice*) |
| 11 | | clay.james@hoganlovells.com<br>HOGAN LOVELLS US LLP |
| 12 | | One Tabor Center, Suite 1500<br>1200 Seventeenth Street |
| 13 | | Denver, Colorado 80202<br>Telephone: 303.899.7300 |
| 14 | | Facsimile: 303.899.7333 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| 20 | In re iPhone Application Litigation | Case No. CV-10-5878 LHK (PSG) |
| 21 | | **DEFENDANT APPLE INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(1), 12(b)(6) AND 12(b)(7)** |
| 25 | | Date: September 1, 2011<br>Time: 1:30 p.m.<br>Ctrm: 4, 5th Floor<br>Judge: Honorable Lucy H. Koh |

APPLE INC.'S REPLY RE MOTION TO DISMISS FIRST CONSOLIDATED CLASS ACTION COMPLAINT
CV-10-5878 LHK (PSG)
pa-1476361

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1
II. THE PLAINTIFFS DO NOT HAVE STANDING .............................................................. 2
III. APPLE'S TERMS OF SERVICE ARE ENFORCEABLE .................................................. 3
    A. The Terms of Service Are Not Unconscionable .......................................................... 4
    B. Negligence Can Be Disclaimed .................................................................................... 6
IV. THERE IS NO JOINT AND SEVERAL LIABILITY ........................................................ 7
V. PLAINTIFFS FAIL TO STATE CLAIMS FOR ADDITIONAL CLAIM-SPECIFIC REASONS .......................................................................................................... 8
    A. Plaintiffs Fail to State a Claim Against Apple for Negligence .................................... 8
    B. The Plaintiffs Cannot State Covenant of Good Faith and Fair Dealing Without Identifying The Purpose Of The Contract ..................................................... 10
    C. Referring to Unidentified "Apps Themselves" Does Not Fix the Consumer Legal Remedies Act Claim ........................................................................................ 11
    D. Plaintiffs Fail to State a Claim Against Apple Under the Computer Fraud and Abuse Act ............................................................................................................ 11
    E. Plaintiffs Fail to State a Claim Against Apple Under California Penal Code Section 502 ................................................................................................................. 12
    F. Plaintiffs Fail to State a Claim Against Apple for Common Law Trespass to Chattels .................................................................................................................. 12
    G. Plaintiffs Fail to State a UCL Claim Against Apple .................................................. 13
VI. IF THE APPS ARE NOT INDISPENSIBLE PARTIES, THEY SHOULD BE DISMISSED WITH PREJUDICE ...................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*A&M Produce Co. v. FMC Corp.*,
 135 Cal. App. 3d 473 (1982) .................................................................................................. 5

*Am. Motorcycle Ass'n v. Super. Ct.*,
 20 Cal.3d 578 (1978) ............................................................................................................... 8

*Aron v. U-Haul Co.*,
 143 Cal. App. 4th 796 (2006) .................................................................................................. 5

*Belton v. Comcast Cable Holdings, LLC*,
 151 Cal. App. 4th 1224 (2007) ............................................................................................ 5, 6

*Berkley v. Dowds*,
 152 Cal. App. 4th 518 (2007) .................................................................................................. 8

*Bolter v. Super. Ct.*,
 87 Cal. App. 4th 900 (2001) .................................................................................................... 5

*Cady v. Anthem Blue Cross Life & Health Ins. Co.*,
 583 F. Supp. 2d 1102 (2008) ................................................................................................... 2

*Delgado v. Trax Bar & Grill*,
 36 Cal.4th 224 (2005) .............................................................................................................. 9

*Doe v. MySpace, Inc.*,
 474 F.Supp.2d 843 (W.D. Tex. 2007) ................................................................................ 9, 10

*Ferrington v. McAfee, Inc.*,
 No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ............................... 3, 4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
 528 U.S. 167 ............................................................................................................................ 2

*Gardner v. Downtown Porsche Audi*,
 180 Cal. App. 3d 713 (1986) ............................................................................................... 6, 7

*Gavin W. v. YMCA of Metro. Los Angeles*,
 106 Cal. App. 4th 662 (2003) .................................................................................................. 7

*Graham v. Scissor-Tail, Inc.*,
 28 Cal.3d 807 (1981) ............................................................................................................... 4

*Henrioulle v. Marin Ventures, Inc.*,
 20 Cal.3d 512 (1978) ............................................................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Ilkhchooyi v. Best*,
    37 Cal. App. 4th 395 (1995) .................................................................................................. 4

*In re Apple & ATTM Antitrust Litig.*,
    No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270 (N.D. Cal. July 8, 2010) ...................... 12

*Invacare Corp. v. Sperry Corp.*,
    612 F. Supp. 448 (N.D. Ohio 1984) ....................................................................................... 9

*Kinderstart.com, LLC v. Google, Inc.*,
    No. C06-2057 JF (RS), 2006 WL 3246596 (N.D. Cal. July 13, 2006) ................................. 10

*Kinney v. United Healthcare Servs., Inc.*,
    70 Cal. App. 4th 1322 (1999) ................................................................................................ 5

*McDonald v. Sun Oil Co.*,
    548 F.3d 774 (9th Cir. 2008) ................................................................................................. 7

*Moreno v. Sanchez*,
    106 Cal.App.4th 1415 (2003) .............................................................................................. 10

*N. Am. Chemical Co. v. Sup. Ct.*,
    59 Cal.App.4th 764 (1997) .................................................................................................. 10

*O'Hare v. Mun. Res. Consultants*,
    107 Cal. App. 4th 267 (2003) ................................................................................................ 6

*Pelletier v. Alameda Yacht Harbor*,
    188 Cal. App. 3d 1551 (1986) ............................................................................................... 7

*Stirlen v. Supercuts, Inc.*,
    51 Cal. App. 4th 1519 (1997) ................................................................................................ 4

*Tunkl v. Regents of the Univ. of Cal.*,
    60 Cal.2d 92 (1963) ............................................................................................................... 6

**STATUTES**

18 U.S.C.
    § 1030(g) .............................................................................................................................. 11

California Penal Code
    § 502 .................................................................................................................................... 12

## I.   INTRODUCTION

Plaintiffs made an ambitious strategic choice to file a Consolidated Complaint calculated to create maximum leverage against the defendants, and to overshadow any other plaintiff who might assert more focused claims.  Having previously alleged that *some* App developers, without adequate consent, collect *some* information from devices running Apple Inc.'s ("Apple") iOS operating system ("iOS Devices") and communicate that information to third parties, Plaintiffs filed a Consolidated Complaint implying that *all* App developers collect *all* information from *all* App users and, without adequate consent, transfer *all* such information to third parties.

Plaintiffs' election to go "all in" had tactical implications: to avoid limiting the case to the practices of specific App developers, Plaintiffs named no App developer defendants.  To avoid the problem that Apps have varying data collection practices and that the associated software license agreements have varying consents to data collection and retransmission, Plaintiffs failed to identify even a single App that they downloaded.  And, to avoid limitation of the case to unauthorized transfers of items of information that might actually be sensitive, Plaintiffs failed to identify any item of information alleged to have been retrieved from their iOS Devices by an App developer and communicated to any defendant.  Finally, the Consolidated Complaint (Doc. 71) ("Compl.") does not even identify the devices that each defendant allegedly used.

Plaintiffs' strategy has failed.  In service of ambition to seek certification of an overbroad class, Plaintiffs' counsel so watered down the allegations as to the named Plaintiffs that the Consolidated Complaint fails to make sufficient allegations to give rise to federal court jurisdiction.  Having treated Plaintiffs themselves as a relatively unimportant footnote to a case about "consumers," counsel fails to allege, in a non-formulaic fashion, what it is that happened to Plaintiffs to injure them, and how that as yet unstated injury is fairly traceable to Apple.

Plaintiffs are unable to defend the allegations found in the Consolidated Complaint. Instead, the Opposition seeks to rewrite it.  It repeatedly misstates the Consolidated Complaint's allegations.  Motions to dismiss, though, are determined on what the Plaintiffs put into the Complaint, not on what they wish they'd put in.  Most prevalently, the Opposition repeatedly asserts that the Consolidated Complaint alleges that Apple "caused" information to be transmitted

APPLE INC.'S REPLY RE MOTION TO DISMISS PLAINTIFF'S FIRST CONSOLIDATED CLASS ACTION COMPLAINT
CV-10-5878 LHK (PSG)
pa-1476361

1

1  to advertising and analytics companies.  That is not what the Consolidated Complaint says.  The

2  Consolidated Complaint actually alleges only that Apple *made it possible* for the other defendants

3  and the non-party App developers to obtain information from Plaintiffs' devices.  The

4  Consolidated Complaint does *not* allege that Apple *caused* these things to happen.  Since Apple

5  did not cause anything thing to happen, even according to the allegations of the Consolidated

6  Complaint, Apple cannot be liable.

7       Many of the arguments that Plaintiffs make apply to all of the defendants equally, and

8  Apple joins the Mobile Industry Defendants' Reply In Support Of Motion To Dismiss First

9  Consolidated Class Action Complaint ("MID Reply").  This brief addresses the arguments in

10 Plaintiffs' Opposition that are specific to Apple.

## II.   THE PLAINTIFFS DO NOT HAVE STANDING

12      There appears to be agreement about the legal standard to be applied.  Plaintiffs must

13 make allegations sufficient to show that they suffered injury-in-fact, as a result of something that

14 was done by Apple.  Plaintiffs must show that their injury is "fairly traceable" to Apple.  *Friends*

15 *of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180.  Plaintiffs may not sue

16 a defendant, in this case Apple, against whom they have no individual claim.  *Cady v. Anthem*

17 *Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1105 (2008).

18      Plaintiffs contend that they have made the necessary allegations.  (Plaintiffs' Opposition

19 to Defendant's Motion To Dismiss (Doc. 153) ("Opp.") 8:10-9:4.)  In fact they have not alleged

20 sufficient facts to establish standing over any defendant, as discussed in the MID Reply.  The

21 Court can dismiss the Consolidated Complaint as to Apple without even reaching the broader

22 issue, however, because the Consolidated Complaint says next to nothing about Apple.  Indeed,

23 the allegations upon which Plaintiffs primarily rely are not even made against Apple.

24      In their Opposition, Plaintiffs first point to paragraphs 180-185 of the Consolidated

25 Complaint as containing the allegations they claim defeat Apple's motion.  (Opp. 8:9-12.)  These

26 paragraphs do nothing more than assert legal conclusions.  They do not include a single factual

27 statement about how any Plaintiffs were harmed.  They do not state any facts that suggest they

28 suffered injury-in-fact by any defendant, much less Apple.

1  Plaintiffs next point to paragraphs 84 and 91 of the Consolidated Complaint as examples
2 of pleading injury-in-fact. (Opp. 8:13-15.) These paragraphs assert that personal information is
3 "an asset of economic value." This is not true, as shown in the MID Reply. Even if it were true,
4 however, there is no allegation that *Apple* misappropriated any information. The
5 misappropriation is alleged to have been done by the *other* defendants. Those allegations cannot
6 confer standing as against Apple.

7  Plaintiffs point also to paragraphs 74-89 of the Consolidated Complaint as allegations of
8 injury. (Opp. 8:16-9:2.) Again, all of these allegations describe the actions of the Mobile
9 Industry Defendants. They do not describe any actions of Apple and do not show how Apple
10 may have caused any injury-in-fact.

11  Finally, Plaintiffs point to paragraphs 3, 167, and 170-77 as the allegations that save their
12 Complaint. (Opp. 9:2-4.) But these are simply the conclusory allegations that Plaintiffs make in
13 support of their trespass claim. Plaintiffs do not recite any specific facts to support these bare
14 conclusions, let alone any facts that state they have been injured or that these supposed injuries
15 have anything do with the privacy violations on which their Complaint is based. To use
16 Plaintiffs' analogy, it is insufficient for Plaintiffs to allege that the harm they suffered was "a
17 trifle." They have to identify the trifle, allege facts sufficient to make a plausible showing that
18 such a trifle exists, and make allegations that Apple caused it. The Consolidated Complaint does
19 none of these things.

20 **III. APPLE'S TERMS OF SERVICE ARE ENFORCEABLE**

21  It is a problem for Plaintiffs that Apple has fully and accurately described its policies and
22 practices, and that it has clearly and fairly disclaimed liability for the actions of third parties. To
23 get around this, Plaintiffs contend that the Court may not properly consider the various
24 agreements on a motion to dismiss. But Plaintiffs acknowledge that the Court may consider
25 documents the contents of which are referenced in the Consolidated Complaint and about which
26 there is no "reasonable dispute." *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL
27 3910169, at *3 (N.D. Cal. Oct. 5, 2010). Plaintiffs do more than merely reference the contents of
28 the agreements, especially the Terms of Service, in the Complaint—in fact, they repeatedly refer

1  to the Terms of Service (Compl. ¶¶ 59, 110, 197), quote lines from the document (*Id.* ¶ 36), and
2  even premise an entire cause of action on the existence of these agreements (*Id.* ¶¶ 201-202).
3  Plaintiffs can hardly argue now that it is improper for the Court to review documents which they
4  have referenced so frequently.

5        Plaintiffs attempt to prevent the Court from reading these contracts by simply, and
6  vaguely, "questioning their authenticity," but this is not enough to create a real dispute.  In
7  *Ferrington*, upon which Plaintiffs rely, the plaintiffs created a reasonable dispute as to the
8  authenticity of the documents by providing conflicting evidence—for example, the Court found
9  that providing a materially different screenshot from the one defendants provided was enough to
10 create a reasonable question as to the screen shot's authenticity.  2010 WL 3910169, at *3.
11 Plaintiffs could have done the same—if they believe that the contract they have quoted in their
12 Complaint is so different from the one defendants have provided, they easily could have provided
13 a copy of it.  They have not provided any such conflicting evidence because there is none.  In
14 fact, they have been careful to avoid identifying any evidence, and have not stated any factual
15 basis for their challenge to the documents' authenticity.  Since Plaintiffs' simple "questioning" is
16 clearly insufficient in light of the complete lack of evidence to create a reasonable dispute about
17 the authenticity of the agreements, the Court may properly consider them.

18       **A.**    **The Terms of Service Are Not Unconscionable**

19       Plaintiffs claim that the iTunes Terms of Service is unconscionable.  The Opposition
20 begins by implying that because the Terms of Service may be a contract of adhesion, they are
21 automatically unenforceable.  This is not the case.  An adhesive contract is "fully enforceable
22 according to its terms unless . . . it was unduly oppressive or unconscionable under applicable
23 principles of equity."  *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1530 (1997); *Graham v.*
24 *Scissor-Tail, Inc.*, 28 Cal.3d 807, 819-20 (1981).  Plaintiffs still must prove that the contract was
25 both procedurally and substantively unconscionable.  Plaintiffs have done neither.

26       To satisfy the first prong, procedural unconscionability, Plaintiffs must allege the presence
27 of both oppression—more specifically, the lack of negotiation and "an absence of meaningful
28 choice"—and surprise.  *Ilkhchooyi v. Best*, 37 Cal. App. 4th 395, 409 (1995).  But Plaintiffs

1   cannot claim they were oppressed because they did have meaningful choices: they could have not
2   purchased apps, they could have not purchased an iPhone (or whatever iOS Device they may
3   have bought—the Consolidated Complaint does not say), or they could have purchased a different
4   company's phone or device. The market for any of these devices is highly competitive, with
5   many alternative choices. "The availability of alternative sources from which to obtain the
6   desired service defeats any claim of oppression, because the consumer has a meaningful choice."
7   *See, e.g.*, *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007); *Aron v.*
8   *U-Haul Co.*, 143 Cal. App. 4th 796, 809 (2006).

9         Plaintiffs are not similarly situated to the plaintiffs in the cases upon which they try to
10  rely. There is no pressure to purchase an iOS Device equivalent to the pressure of having to sign
11  an employment agreement in order to remain employed, for example. *See, e.g.*, *Bolter v. Super.*
12  *Ct.*, 87 Cal. App. 4th 900, 907 (2001); *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th
13  1322, 1329 (1999). Products like the iOS Devices are not necessities, and contract terms that
14  relate to nonessential services cannot be oppressive as a matter of law. *Belton*, 151 Cal. App. 4th
15  at 1245-46.

16        Plaintiffs have also failed to allege the second prong, that they were surprised by these
17  terms. To the contrary, Plaintiffs open their Complaint by citing two very public statements from
18  Apple's top management that allegedly told the world that Apple "has maintained control of how
19  the devices work, how consumers use them, and what happens when consumers use them."
20  (Compl. ¶ 1.) This is the opposite of surprise. Plaintiffs cannot argue out of one side of their
21  mouths that they relied on Apple's statements that it controlled everything about the devices and
22  then argue out of the other side that they were surprised by Apple's Terms of Service.

23        As to the form of the written policies, the element of surprise might be satisfied where the
24  provisions are written in inconspicuous typeface, on the back of a printed sheet, or are presented
25  in circumstances where the plaintiff has time pressure to read and agree to the terms. *See, e.g.*,
26  *Kinney*, 70 Cal. App. 4th at 908; *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 490
27  (1982). This is not the case here. The relevant terms are conspicuous, and some are even bolded,
28  in italics, and in all caps. Plaintiffs are under no time pressure to accept these terms. Plaintiffs'

1  only objection is that the documents are "lengthy." (Opp. 18:26.) However, the complaint that
2  the disclaimers are lengthy is by no means a surprise, given that only a limited amount of text can
3  be displayed on an iPhone, or any other iOS Device, at any one time. Since Plaintiffs have not
4  adequately pled oppression or surprise, they have not adequately pled procedural
5  unconscionability.

6  The Consolidated Complaint also fails to plead substantive unconscionability adequately.
7  Plaintiffs would have to allege facts to show truly oppressive terms in order to satisfy this
8  requirement. *See O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 273 (2003). They
9  have not done so. Even if the terms are one-sided, when determining substantive
10 unconscionability, courts also look to whether the terms "are such an extreme departure from
11 common business practice." *Belton*, 151 Cal. App. 4th at 1247. Yet Plaintiffs have not alleged
12 that Apple's Terms of Service are so grossly out of line with common industry practice as to
13 shock the conscience. In fact they have alleged nothing about industry practice. In light of the
14 total lack of procedural unconscionability, Plaintiffs would need to allege much more in order to
15 claim adequately that the terms of service are unconscionable.

16 **B.    Negligence Can Be Disclaimed**

17 Apple's disclaimer of liability for negligence is not contrary to public policy, and is
18 enforceable. Plaintiffs cite a list of characteristics of contracts that implicate public policy from
19 *Tunkl v. Regents of the Univ. of Cal.*, 60 Cal.2d 92, 102 (1963), a critical one of which is that the
20 defendant "is engaged in performing a service of great importance to the public, which is often a
21 matter of *practical necessity* for some members of the public." *Id.* at 98-99 (emphasis added).
22 The essence of this factor is whether or not the service is an optional item that consumers can live
23 without or something that they need so much that they do not have a choice but to accept
24 undesirable liability disclaimers. *Gardner v. Downtown Porsche Audi*, 180 Cal. App. 3d 713, 718
25 (1986).

26 Apps and mobile devices are completely optional products, certainly not matters of
27 practical necessity to anyone. And Plaintiffs' failure to identify any specific Apps, much less
28 name their developers as defendants, again defeats their argument that Apps somehow are

1  necessities. Without identifying the Apps that Plaintiffs allegedly used, or even hinting at what
2  services those Apps provided, Plaintiffs are not in any position to argue that they are either of
3  great importance to the public or matters of practical necessity. Nor do Plaintiffs attempt to
4  provide any facts showing that any specific Apps ever were necessary to any of them personally.

5        A footnote in the Opposition attempts to avoid this problem by citing Paragraph 37 of the
6  Consolidated Complaint, which alleges that "Apple mobile devices and Apps are now used by
7  many consumers in almost all facets of their daily lives." (Compl. ¶ 37; Opp. 21:27, fn. 20.) The
8  answer to this is, so what? This motion must be decided based on what Plaintiffs allege about
9  their own experience, not vague generalities about the activities of some unspecified consumers.
10 There are no such allegations about these Plaintiffs. The Consolidated Complaint alleges only
11 that they downloaded and used Apps. (Compl. ¶¶ 8-13.) The Consolidated Complaint says
12 nothing about the devices Plaintiffs used, the Apps they downloaded, or what Plaintiffs did with
13 those Apps, much less facts showing that the Apps somehow were crucial and necessary for their
14 lives. The examples from the cases upon which Plaintiffs rely—automobile repair (*Gardner*, 180
15 Cal. App. 3d at 719), child care (*Gavin W. v. YMCA of Metro. Los Angeles*, 106 Cal. App. 4th
16 662, 675 (2003)), residential leasing (*Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 519
17 (1978)), even yacht harbors (*Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d 1551, 1555
18 (1986))—have nothing to do with anything set forth in the Complaint, even if it could be argued
19 that these are examples of required services for some portion of the population.

20 **IV.    THERE IS NO JOINT AND SEVERAL LIABILITY**

21       Since the various agreements bar all of Plaintiffs' claims against Apple, Plaintiffs attempt
22 to sidestep the problem by alleging that Apple is jointly and severally liable for all of the claims
23 against the Mobile Industry Defendants. However, Apple cannot be held liable for the acts of
24 third parties under this theory for a variety of reasons. First, none of the statutory causes of action
25 provide a right of action for joint and several liability nor even mention it. Had Congress or the
26 California Legislature intended to permit joint and several liability for these statutes, they would
27 have included it in the text of these statutes. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 780
28

1  (9th Cir. 2008) ("The preeminent canon of statutory interpretation requires us to presume that
2  [the] legislature says in a statute what it means and means what it says there.").
3        Additionally, Apple cannot be held liable for any of the claims because Plaintiffs have not
4  alleged that Apple caused them any harm. Joint and several liability requires that each defendant
5  be a proximate cause of the Plaintiffs' injuries, such that it would be improper to apportion
6  liability amongst them. *See Am. Motorcycle Ass'n v. Super. Ct.*, 20 Cal.3d 578, 587 (1978).
7  Plaintiffs' only allegation about Apple is that Apple improperly designed iOS. (Compl. ¶¶ 58, 61,
8  67.) Plaintiffs never specify the causal connection between Apple's actions and the harm they
9  purportedly suffered. Apple cannot share liability when Plaintiffs have not alleged that Apple
10 caused any of the harm.

## V. PLAINTIFFS FAIL TO STATE CLAIMS FOR ADDITIONAL CLAIM-SPECIFIC REASONS

### A. Plaintiffs Fail to State a Claim Against Apple for Negligence

Plaintiffs' response to the motion to dismiss their negligence claim is another example of Plaintiffs arguing points that are not in the Complaint.

To state a claim for negligence, Plaintiffs must plead specific acts or omissions Apple committed that constitute a proximate cause of the injury. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 527-28 (2007). Plaintiffs did not allege that Apple *caused* anything, only that Apple's alleged negligent design of iOS somehow allowed the other defendants to "acquire personal information without consumers' knowledge or permission . . ." (Compl. ¶ 115.) This is not enough. Nothing in the Complaint ever articulates a nexus between the design of Apple's platform (or the information it supposedly caches) and the alleged misappropriation of or devaluation of personal data. Plaintiffs have therefore failed to plead the causation element of a standard negligence claim, and their claim must be dismissed.

Plaintiffs also have failed to allege facts sufficient to support the essential element of duty. Indeed, the Complaint never even identifies the applicable standard of care. Plaintiffs cannot now try and remedy this omission by dedicating five pages of largely unsupported argument to

discussing the standard of care they want to apply. If it is not in the Complaint, it cannot defeat a motion to dismiss.

In any event, Apple's policies and practices as alleged in the Complaint do satisfy the ordinary standard of care to which Apple, like other software developers, is held. *See e.g., Invacare Corp. v. Sperry Corp.*, 612 F. Supp. 448, 451 (N.D. Ohio 1984). The Complaint provides that Apple reviews Apps that are available in the App Store (¶ 38), and submits Apps through a "rigorous approval process" (¶ 41). As discussed in Apple's moving papers, Apple's Terms of Service also specifically advise iOS Device users that third party services, such as Apps, may collect information, and encourage users to familiarize themselves with the third party's privacy policy. (Doc.142, §5.) Based on Plaintiffs own pleadings, therefore, Apple satisfies the applicable standard of care.

Plaintiffs' efforts to expand Apple's zone of responsibility beyond the ordinary standard of care is without merit. The universal rule, as stated in the *Delgado* case relied upon by Plaintiffs, is that "there is no duty to act to protect others from the conduct of third parties." *Delgado v. Trax Bar & Grill*, 36 Cal.4th 224 at 235 (2005). Plaintiffs' attempt to shoehorn into an exception to this rule by claiming Apple has a "special relationship" with its customers is a lark. (Opp. 47:3-48:1). There is no basis for extending standard premises liability law into online activity and, tellingly, Plaintiffs do not cite a single case for support. (*Id.*). Further, at least one district court has held exactly the opposite. *See Doe v. MySpace, Inc.*, 474 F.Supp.2d 843, 851 (W.D. Tex. 2007). In *Doe*, the mother of a minor who was sexually assaulted by someone she met on the social networking website MySpace sued MySpace for, among other things, negligence. Granting MySpace's motion to dismiss the plaintiff's negligence claim for the lack of duty, the court ruled:

> The Court declines to extend premises liability cases to the internet context particularly where, as here, the Defendant provides its service to users for free. ***Plaintiff has cited no case law indicating that the duty of a premises owner should extend to a website as a "virtual premises."***

*Id.* (emphasis added)[1] Plaintiffs' analysis under premises liability law should be rejected.

Plaintiffs' reliance on service provider cases is equally off base. (Opp., 44:7-17) (citing *N. Am. Chemical Co. v. Sup. Ct.*, 59 Cal.App.4th 764, 774 (1997) and *Moreno v. Sanchez*, 106 Cal.App.4th 1415, 1435 (2003).) Each of these cases is factually distinct. *Moreno* analyzes the independent tort duty of home inspectors that arises from the California Business & Professions Code. *See Moreno* 106 Cal.App.4th at 1435. *North American Chemical* is not even a duty case but, rather, stands for the proposition that a service provider—in that case a packaging and shipping company—has a common law duty to perform service contracts with care. *See N. Am. Chemical Co.*, 59 Cal.App.4th at 774. *North American Chemical* is not relevant.

Finally, Plaintiffs' argument that Apple's purported control over the App Store effectively saddles it with a "Good Samaritan" duty to act with reasonable care ignores the very disclaimers Apple places in its Terms of Service. (Opp. 46: 15-47:2.) The explicit disclaimers preclude the argument that any customer "reasonably relied" upon Apple's actions "to his or her detriment." (*Id.*, 46:18-21.) And nothing in the Complaint supports the theory that Apple's purported control of the App Store "increased the risk of harm to another." (*Id.*) To the contrary, on this point, Plaintiffs allege Apple designed the iOS platform too *permissively* because it supposedly enables App developers to access customer data. (Compl. ¶115.)

### B. The Plaintiffs Cannot State Covenant of Good Faith and Fair Dealing Without Identifying The Purpose Of The Contract

Despite their earlier objections that Apple cannot rely on its agreements with them, Plaintiffs attempt to save their covenant claim by arguing that Apple committed "intentional acts designed to thwart direct benefits of Plaintiffs' contract with Apple." (Opp. 50:23-24.) What they do not and cannot explain, however, is what benefits they were supposedly deprived of. If they are arguing that the contracts somehow obligated Apple to monitor and police the actions of the Mobile Industry Defendants, that is exactly the opposite of what the contracts say. Indeed, Plaintiffs' description of *Kinderstart.com, LLC v. Google, Inc.*, No. C06-2057 JF (RS), 2006 WL

---

[1] It is undisputed that iTunes membership and access to the App Store is free.

3246596, at *12 (N.D. Cal. July 13, 2006)—that it "stands for the proposition that a party does not have to take actions which are not required by the contract in order to satisfy its implied covenant of good faith and fair dealing"—makes exactly this point. (Opp. 50:12-14.) Absent an allegation of what the implied contract terms are, and what it is that Apple allegedly did to breach these specific terms, there can be no breach of any implied covenant.

### C. Referring to Unidentified "Apps Themselves" Does Not Fix the Consumer Legal Remedies Act Claim

Plaintiffs' only answer to the case law holding that software is not a good or a service is to argue, without citing any authority, that "the very nature of the Apps themselves can be considered 'services' under the CLRA." (Opp. 41:2-3.) Additionally, Plaintiffs' contention about "the Apps themselves" must be disregarded because "the Apps themselves" are not a part of this lawsuit. Plaintiffs specifically decided to dismiss the App developers from the case when they filed their Consolidated Complaint, and of course must now argue that they need not be parties. Beyond that, the Consolidated Complaint does not even refer to or describe any specific Apps. There is no basis for the Court to make any analysis of the "nature" of unidentified Apps that are not named in the Consolidated Complaint, even if such an analysis were otherwise proper. If "the Apps themselves" matter, Plaintiffs should have said something about them in the complaint.

### D. Plaintiffs Fail to State a Claim Against Apple Under the Computer Fraud and Abuse Act

Apple showed in its moving papers that the only CFAA allegation against Apple is that it negligently designed its iOS software, and that negligent design of computer software or hardware is specifically excluded from claims under the CFAA. 18 U.S.C. § 1030(g). Plaintiffs do not address this in their Opposition. Instead, they describe at length their allegations against the Mobile Industry Defendants, not Apple. They again argue only that Apple's design somehow allowed the Mobile Industry Defendants to violate the CFAA. This claim is barred by section 1030(g) and must be dismissed for that reason.

1  The Complaint also fails to show that there was no authorization. To explain away the fact that Plaintiffs intentionally downloaded the software, Plaintiffs attempt to make an untenable distinction between the relevant software and particular code within that software, but they do so without providing any legal authority demonstrating that this is a valid distinction. (Opp. 31:18-20.) Since Plaintiffs concede that they "knowingly downloaded Apple software," they cannot argue that the transmission of iOS upgrades is without authorization. *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 U.S. Dist. LEXIS 98270, at *26 (N.D. Cal. July 8, 2010).

### E. Plaintiffs Fail to State a Claim Against Apple Under California Penal Code Section 502

As with the CFAA claim, the Opposition attempts to explain how Plaintiffs have stated a claim against the Mobile Industry Defendants, but almost entirely ignores Apple. Plaintiffs argue that paragraphs 63-64 and 68-70 state claims against all of the defendants, but all but one make allegations against only the Mobile Industry Defendants and not against Apple. The one that mentions Apple, paragraph 70, alleges only that Apple somehow controlled something that caused the other defendants to violate the Penal Code. Plaintiffs do not cite any authority for the implied assertion that Apple is somehow responsible for the alleged actions of the other defendants. These limited allegations against Apple are insufficient, and this cause of action must be dismissed.

### F. Plaintiffs Fail to State a Claim Against Apple for Common Law Trespass to Chattels

Plaintiffs have no real response to Apple's motion to dismiss the trespass claim. The cases relied upon by Plaintiffs have no application to any of the Complaint's allegations against Apple. There is no allegation that Apple used search robots or scraping devices, or accessed computer systems without authorization, or sent bulk spam e-mails. The Opposition's assertion that the Complaint is sufficient because it alleges that "information was obtained by defendants without consent" (Opp. 40:1-2) does not apply to Apple. There is no allegation that Apple obtained any information, only that Apple somehow made it possible for the other defendants to

1  obtain information.  Even if Plaintiffs could find a way around the conclusive authority cited by
2  the Mobile Industry Defendants, there are no allegations that are sufficient to support a claim
3  against Apple.

### G. Plaintiffs Fail to State a UCL Claim Against Apple

There is no real dispute about the law that applies to the UCL claim.  The issue is whether Plaintiffs have pled sufficient facts to state a claim under any prong of the UCL.  The answer, as described more fully in the MID Reply, is no.  But the issue is even easier to resolve with respect to Apple.  Plaintiffs' only response to the motion is that they allege that the defendants obtained and disclosed their personal information. (Opp. 37:10-11; 39:11-12.)  This is not true as to Apple, though.  The Consolidated Complaint alleges that the Mobile Industry Defendants obtained and used that information. (Compl. ¶¶ 61-73.)  It does not allege that Apple obtained or used Plaintiffs' personal information.  Since Plaintiffs do not and cannot make such an allegation against Apple, the claims against Apple must be dismissed even if Plaintiffs' theory were otherwise viable.

## VI. IF THE APPS ARE NOT INDISPENSIBLE PARTIES, THEY SHOULD BE DISMISSED WITH PREJUDICE

It appears that Plaintiffs are trying to have it both ways with the Apps.  On the one hand, the App developers that were originally named in the individual actions are not named in the Consolidated Complaint, but they were not formally dismissed, and Plaintiffs have reserved the right to bring them back into the case.  On the other hand, Plaintiffs insist (despite initially naming several as defendants) that the App developers need not be part of the case.  Plaintiffs should either dismiss the App developers from the case with prejudice, or admit that they are in fact necessary parties.

Plaintiffs argue that the App developers have no legally protected interest because any such interest "could only arise from contracts between them and Apple." (Opp. 12:4-7.) Elsewhere in the Opposition, though, Plaintiffs argue that Apple controls the entire App system and even is responsible for the App developers' wrongdoing.  Thus by controlling Apple, Plaintiffs seek to control the App developers, and specifically to control the App developers'

1 relationships with their customers. Of course the App developers have a protected interest;
2 Plaintiffs are just trying to affect those interests by suing Apple because it is a single, and
3 undoubtedly deeper, pocket.

4     Plaintiffs also argue that complete relief can be awarded without the App developers. A
5 brief review of the relief Plaintiffs are seeking shows that this is not the case. Among other things,
6 Plaintiffs are seeking an injunction preventing Apple from collecting and transferring users'
7 location information and requiring all defendants to provide users with the ability to deny consent
8 for further data collection. (Compl., Demand for Relief ¶ C.) Relief of that scope cannot be
9 awarded without participation of the App developers if it is to be enforceable.

10     If Plaintiffs truly believe that the App developers are not required to be part of this case,
11 they should dismiss the App developers from the case with prejudice. That would not prejudice
12 them, according to their arguments in the Opposition, and would prevent gamesmanship by
13 making sure Plaintiffs do not try to add them back in later.

15 Dated: August 3, 2011

JAMES F. McCABE
BRYAN WILSON
TERESA N. BURLISON
MORRISON & FOERSTER LLP

MICHAEL L. CHARLSON
MAREN J. CLOUSE
HOGAN LOVELLS US LLP

By: /s/ Bryan Wilson
    BRYAN WILSON

Attorneys for Defendant
APPLE INC.